WILLIAM ENGEL, and another, *vs.* FRED W. AYER.

Penobscot. Opinion May 31, 1893.

*Deed. Exception. Profit a prendre. Flats. Booms.*

Rights in land, such as *profit a prendre*, may be the subject of a separate grant.

An exception in a deed retains in the grantor some portion of his former estate; and whatever is thus excepted, or taken out of the grant, remains in him as of his former title.

The rule of the common law, that a fee simple cannot be conveyed without the word "heirs," no matter now plainly the intention to do so may be expressed by other words of perpetuity, does not apply to an exception, properly so called, or to an easement appurtenant to other land of the grantor, or of a right to take profit in the soil.

In an action of trespass against the defendant for placing and maintaining booms and fastening them to plaintiffs' piers (used in the ice business) and storing logs therein, on flats owned by the plaintiffs in the town of Brewer, it appeared that the plaintiffs derived title under a deed from the owner of a large tract extending up and down the river, conveying to them a parcel measuring four hundred feet on the river, lying between the river and county road. The deed contained the following clause next after the description, viz: "Excepting and reserving, however, the full right of keeping and maintaining a boom or booms on the flats between high and low water marks of said river along the premises hereby conveyed, either to use myself or to let or sell to other persons." The defendant, a mill owner upon adjoining premises, justified under a subsequent deed of the same grantor conveying to him said right to keep and maintain booms, and, after reciting the above exception, containing the following clause, viz: "Meaning and intending hereby to convey all the lands, shores, flats, privileges and rights to keep and maintain booms which [grantors] owned, . . . between said county road and Penobscot river." . . . . *Held*; That the defendant had acquired an unlimited right to maintain booms "on the flats" throughout their length and breadth with the privilege of using them for the practical purposes for which booms are usually maintained. It is a full right, co-extensive with the area of the flats; *Also*, that the rights excepted and retained by the grantor in and by the first conveyance, now held by the defendant by the second conveyance is not an easement merely, but a profitable interest in the land itself passing to the grantor's heirs upon his death, and capable of being granted by them.

ON REPORT.

The case appears in the opinion,

*C. A. Bailey,* for plaintiffs.

Plaintiffs contend; *first*, the reservation is of a new right not before in being, and having no words of inheritance, creates a reservation and not an exception, and so limited to grantor's life;

*second*, it was an easement in gross and limited, *ex necessitate*, by its express terms; *third*, if an easement appurtenant, it was appurtenant to some other estate of the grantor, and not another which grantor did not own; *fourth*, it is only a right to maintain a boom "along" the front of plaintiffs' lot on the flats and does not carry the right to fill such boom with logs; *fifth*, defendant has no right to support such boom by plaintiffs' piers.

Counsel cited : *Ashcroft* v. *Eastern R. R.* 126 Mass. 196 ; *Curtis* v. *Gardner*, 13 Met. 461 ; *Buffum* v. *Hutchinson*, 1 Allen, 61 ; *Sedgwick Laflin*, 10 Allen, 430 ; *Dennis* v. *Wilson*, 107 Mass. 593 ; *Amidon* v. *Harris*, 113 Mass. 59 ; *Davenport* v. *Lamson*, 21 Pick. 72 ; *French* v. *Marston*, 4 Foster, 440 ; *Mendell* v. *Delano*, 7 Met. 180-1 ; *Moulton* v. *Faught*, 41 Maine, 298 ; *Hankey* v. *Clark*, 110 Mass. 265 ; *Stanwood* v. *Kimball*, 13 Met. 526 ; *Foster* v. *Foss*, 77 Maine, 279 ; *Rollins* v. *Clay*, 33 Maine, 138.

*Wilson and Woodard, for defendant.*

WHITEHOUSE, J.    This is an action of trespass *quare clausum* for placing and maintaining booms and fastening them to the plaintiffs' piers, and storing logs therein, on flats owned by the plaintiffs in the town of Brewer.    The case is presented on a report of the evidence.

The plaintiffs derive title from Thomas N. Egery, and the defendant justifies his use of the flats by a subsequent grant of an easement therefor from Egery's devisees.

Egery was the owner of a tract of land lying between the Penobscot river and the county road and extending up and down the river about half a mile.    August 23, 1880, in consideration of $1500, he conveyed to the plaintiffs a certain parcel of it, measuring four hundred feet on the river, by deed containing the following clause after the description, viz :

" Excepting and reserving, however, the full right of keeping and maintaining a boom or booms on the flats between high and low water marks of said river along the premises hereby conveyed, either to use myself or to let or sell to other persons."

The Penobscot river at this point is a tidal river, and the flats in question extend outward from the shore line a uniform distance of about two hundred feet, high water mark being about 108 feet from the county road. There was no boom on the premises at the time of this conveyance nor afterward during Egery's life-time ; and it does not appear that any mill had been erected on Egery's land. But the defendant's mills located farther down the river were then in existence, and above the plaintiff's premises at Dyer's Cove, and also below his premises, booms were then maintained for the storage of logs to be manufactured at the defendant's mills. It also appears that from the boom at Dyer's Cove down to that at the defendant's mills on the easterly side of the river, no boom has ever been maintained for any purpose except for the storage of logs at the defendant's mills.

The same year of the conveyance from Egery above named, the plaintiffs erected an ice house on the premises between the county road and the river, and constructed a row of piers on and across the flats to support a run or tramway for the transportation of ice to and from the house.

Egery died in 1885, and August 8, 1888, in consideration of $7,000, his children and devisees conveyed to the defendant the remainder of the land above designated, lying between the county road and the river, by deed containing the following language, viz :

"Excepting from the land hereinbefore described a certain piece of land conveyed by said Thomas N. Egery to William Engel and Julius Waterman by deed dated August 23, 1880, said excepted piece of land being described as follows" (same as plaintiff's premises). "And whereas said Thomas N. Egery in his said deed to Engel and Waterman excepted and reserved the full right of keeping and maintaining a boom or booms on the flats between high and low water marks of said river along the premises conveyed by said deed forever, either to use himself or let or sell to other parties, said right to keep and maintain a boom or booms is hereby conveyed ; meaning and intending hereby to convey all the lands, shores, flats, privileges and rights

to keep and maintain booms which Thomas N. Egery owned at the time of his decease, between said county road and Penobscot river, and between Dyer's Cove, so called, and the mill now owned by said Ayer in said town of Brewer."

It is not in controversy that, since this conveyance, the defendant has maintained a boom upon the flats of the plaintiffs' premises extending along the entire front near low water mark, and has fastened it by chains to the piers erected by the plaintiffs in connection with their ice business, and has used it for booming logs, keeping the flats covered much of the time with logs, to be manufactured at his mills above mentioned.

This deed to the defendant of August 8, 1888, was undoubtedly effectual to convey to him the full right to maintain booms on the flats in question, as "excepted and reserved" by Egery in the prior deed to the plaintiffs, provided this right was of such a nature and extent in fact and of such a character in law that it survived Mr. Egery and passed by will to his devisees.

When the terms employed in the clause of "exception and reservation" in the plaintiffs' deed, are received and understood in the plain, ordinary and popular sense in which they are used in connection with the subject matter, is their meaning obscure? When examined in the light of the internal evidence afforded by the deed itself, is the purpose doubtful? It is contended in behalf of the plaintiffs that this clause of "exception and reservation" in their deed was never intended to authorize the maintenance of a "boom or booms" involving the use of the entire area of the flats for the storage of logs, but consistently with any facts disclosed by the case, may fairly be interpreted to signify only the right to maintain a series of spars or logs secured in line "along" the front of the flats for the purpose of guiding logs past the premises and preventing them from grounding at ebb tide. But the clause describes "the full right of keeping and maintaining a boom or booms on the flats between high and low water marks of said river along the premises hereby conveyed." It thus appears to be an unlimited right to maintain booms "on the flats" throughout their length and breadth, — an unrestricted privilege comprising the entire extent of the

flats. In the exercise of this right the floating logs which constitute a boom, when fastened together at the ends, could be stretched over any part of the flats and in any direction. Nor would it be reasonable to construe it as a right to maintain a boom without the privilege of using it for the practical purpose for which booms are usually maintained. Any right to maintain a boom on the flats which did not carry with it the right to hold logs in it, would apparently be a barren and illusory one. Such a literal construction would also be incompatible with the relative situation of the property, and the object which the parties manifestly had in view. It has been seen that at this time booms were maintained above and below these premises for the storage of logs to be manufactured at the defendant's mills, and that no boom has been maintained for any other purpose on that side of the river between Dyer's Cove and the defendant's mills. It is also fairly to be inferred that these flats were then known to the parties to be a desirable and convenient place for the storage of logs, for we find they have been used for that purpose by the defendant since his purchase in 1888.

When, therefore, the meaning of the grantor's plain and comprehensive language is further illustrated by the facts and circumstances attending the execution of the deed, the conclusion is irresistible that this booming privilege was retained by the grantor with an intention and in the expectation that it would be made available for any useful and beneficial purpose to which the premises seemed to be adapted, either in storing logs on the flats or in guiding them past. It was the "full right" to maintain and use a boom or booms "between high and low water marks" for any purpose for which a boom or booms could ordinarily be used in driving logs and manufacturing lumber.

Again, it is contended in behalf of the plaintiffs that this clause describes a new right not before in being, and as it contains no words of inheritance it creates, not an exception, but a reservation which was limited to the life-time of the grantor, Mr. Egery ; and further, that the right does not appear to be an easement appurtenant to any other land of the grantor, but an easement

in gross attached only to the person of the grantor, and therefore incapable of being granted or devised; and that even if it can be held an easement appurtenant, it must have been appurtenant to some other estate of the grantor, and cannot be used for the benefit of another property which he did not own.

The words "excepting and reserving the full right," etc., "forever, either to use myself or to let or sell to other persons," taken in their ordinary and popular sense, show a clear and unmistakable intention to "except and reserve" a perpetual right inheritable and transferable, and not a personal easement limited by a life-time. But it is an arbitrary rule of the common law that without the word "heirs" a fee simple in land cannot be conveyed by deed, no matter how plainly the intention so to do may be expressed by other words of perpetuity. As stated by the court in *Curtis* v. *Gardner*, 13 Met. 457, "a grant to a man to have and to hold to him forever, or to him and his assigns forever, will convey only an estate for life." See also *Stockbridge Iron Co.* v. *Hudson I. Co.* 107 Mass. 290. This technical and unyielding rule had its origin in the principles of that feudal policy which was swept away more than five hundred years ago, and although it may seem to be a reproach upon our common law that, with all its flexibility and progressive spirit, it still permits the plainly expressed contract of the parties to a deed, to be destroyed by the operation of this "relic of feudal strictness," it has become so imbedded in the law of real property and so interwoven with our system·of conveyancing that it will probably be recognized as an imperative rule until changed by the legislature. (See *contra*, *Cole* v. *Lake Co.* 54 N. H. 279.)

But this rule is not applicable to an "exception," properly so called, of an easement appurtenant to other land of the grantor or of a right to take profit in the soil. A "reservation" is said to vest in the grantor some new right or interest not before existing in him, operating by way of an implied grant, and if it does not contain words of inheritance it will give only an estate for the life of the grantor. The operation of an exception on the other hand, is to retain in the grantor some portion of his

former estate, and whatever is thus excepted or taken out of the grant remains in him as of his former title.     *Wood* v. *Boyd*, 145 Mass. 179.     *Stockbridge Co.* v. *Hudson Co.* 107 Mass. 290.     An exception is always of a part of the thing granted and of a thing in being.     *Winthrop* v. *Fairbanks*, 41 Maine, 307. The idea is aptly and clearly expressed in Bracton's Latin : "*Poterit enim quis rem dare et partem rei retinere, vel partem de pertinentis, et illa pars quam retinet semper cum eo est et semper fuit.*"     Coke Litt. 47a, note b.     But the two principles so frequently blend, and the distinction between them is so often found to be uncertain and obscure, that the two expressions have to a great extent been interchangeably employed.     A reservation is often construed as an exception in order that the obvious intention of the parties may not be defeated.     *Winthrop* v. *Fairbanks, supra* ; *Smith* v. *Ladd*, 41 Maine, 316 ; *Bowen* v. *Conner*, 6 Cush. 132.

In the case at bar the right to maintain booms on the flats was expressly "excepted" as well as "reserved." It was a full right co-extensive with the area of the flats. It had always existed as an essential part of the premises. In a legal sense it was a thing in being and not newly created. In *Smith* v. *Ladd, supra*, a reservation of a right of way, not definitely located, for the benefit of that portion of the lot remaining in the grantor, was held to be a good exception. So also in *Chappell* v. *Railroad*, a late case in Connecticut (24 Atl. Rep. 997), the right reserved to cross a strip of land conveyed to the defendant was held by the court to be in a certain sense a right existing in the grantor at the date of the deed. "It was," said the court, "a part of their full dominion over the strip about to be conveyed by the deed, and not a right to be in effect, conferred upon them by the grantee. . . . In such cases the rule is well settled that a permanent easement in favor of the retained land may be made without words of limitation."

It is agreed, however, in the case at bar that the excepted right is not for the benefit of or appurtenant to, any other lands owned by the grantor at the time, but was a right retained by him "either to use [myself] himself, or to let or *sell* to other

persons." It would, therefore, be technically classified either as an easement in gross, or a right of profit in land, the latter being commonly termed in the books a profit *a prendre in alieno solo.* "If it be a right of way in gross, or a mere personal right," says Chancellor Kent, "it cannot be assigned to any other person or transmitted by descent. It dies with the person." 3 Kent Com. 420. See also *Ackroyd* v. *Smith,* 10 C. B. 164. But in *Wickham* v. *Hawker,* 7 Mees. & W. 63, it was held that a license "reserved" by a grantor of land not for mere convenience and pleasure, but for profit, implied the right to employ servants and also the right to assign it to others. In *Post* v. *Pearsall,* 22 Wend. 425, which was a claim for a landing and place of deposit for merchandise on the bank of a navigable river, Chancellor Walworth said, "nor can it be sustained as an ordinary easement. . . . Such casements are either personal and confined to an individual for life merely, or are claimed in reference to an estate or interest of the claimant in other lands as the dominant tenement; for a profit *a prendre* in the lands of another, when not granted in favor of a dominant tenement, cannot properly be said to be an easement but an estate or interest in land itself." Mr. Washburn thinks this principle furnishes a clew to reconcile the authorities. "The distinction," he says, "seems to be this: if the easement consists in a right of profit *a prendre* such as taking soil, gravel, minerals and the like from another's land, it is so far of the character of an estate or interest in the land itself that if granted to one in gross, it is treated as an estate and may, therefore, be for life or inheritance. But if it is an easement proper, such as a right of way and the like, and is granted in gross, it is a mere personal interest and not inheritable." Wash. Ease. 13. This was cited with approval in *Fishing Co.* v. *Carter,* 61 Penn. 21 (S. C. 100 Am. Dec. 597). There the plaintiff claimed the right to draw seines on the soil of the riparian proprietor for the purpose of taking fish, not as appurtenant to any dominant estate but as an incorporeal hereditament and easement in gross vested in him and derived from his ancestors in fee simple. Sharswood, J., said: "A right to take fish is a

profit *a prendre in alieno solo*. It implies the right to fix stakes or capstans for the purpose of drawing the seine. . . . The grantee in the nature of things must have exclusive possession for the time he is fishing and for that purpose; the grantor, at all other times, and for all other purposes." In *Goodrich* v. *Burbank*, 12 Allen, 459, the right to draw water from a spring by means of an aqueduct, which was reserved to the grantor, his heirs and assigns, without reference to any other estate with which it was to be used, was held to be the subject of grant and inheritance. See also *Owen* v. *Field*, 102 Mass. 100, and *Dority* v. *Dunning*, 78 Maine, 381. According to Mr. Washburn such a right may be regarded as a *species of profit a prendre* without violating any principle of law, and therefore may be the subject of a separate grant. Wash. Ease. 14-15. In *Hill* v. *Lord*, 48 Maine, 83, it was held that the right to take seaweed from flats was not a mere easement but a right to take profit in the soil. See also cases there cited for other instances of the right profit *a prendre*. But *Littlefield* v. *Maxwell*, 31 Maine, 134, affords a still more pertinent illustration. There the defendant claimed the right to pile wood and seaweed on the land of another for the purpose of sale and shipment, and the court said: "Such a use of another's land must be considered as a profitable one arising to those who exercise it. It is not a claim to carry anything away from the soil, but the direct and continual appropriation of it for the purpose of gain. Indeed it appears to go beyond a mere incorporeal right and in the full extent of its exercise to claim the entire dominion of the land, so as to deprive the owner of any benefit from it. . . . The claim is certainly one of an interest or profit in the soil."

In the case at bar the right to maintain booms involves the right to drive stakes, set posts and erect piers on the soil of the flats for the purpose of securing the logs which compose the booms. The right to maintain booms carries with it by implication in this case the right to use them either for " sheer " booms or storage booms or for both purposes. In the full extent of its exercise the entire area of the flats may be covered with logs. At such times and for such a purpose, it involves practical

dominion and control of the premises. "Such a use of another's land must be considered as a profitable one. . . . It is a direct and continual appropriation of it for the purpose of gain." *Littlefield* v. *Maxwell, supra.* The right excepted and retained by Mr. Egery in his deed to the plaintiffs, was, therefore, not a mere easement properly so-called but a profitable interest in the land itself which passed to his children by the devise and was by them granted to the defendant. And it is a satisfaction to observe that this conclusion is not only in harmony with the authorities, but it effectuates the intention of the parties clearly manifested by the language of the exception examined in the light of the attending facts.

But the plaintiffs still claim that the act of the defendant in fastening his boom by chains to the plaintiffs' piers on the flats, was an infringement upon their rights from which some damage is presumed to flow ; and it is stipulated in the report that if the plaintiffs are entitled to judgment upon any phase of the case the damages are to be assessed at *nisi prius* ; otherwise a nonsuit is to be entered.

It has been seen that after their purchase in 1880, the plaintiffs erected a row of piers across the flats to support a tramway for carrying ice. There were no piers on the premises at the time of the conveyance. By their deed the plaintiffs acquired title to the land as it then was subject to the paramount right excepted and retained by the grantor to use any and every part of the surface of the flats for the purpose of booming logs. As owners of the fee they may still use the flats for any purpose which does not materially impair or unreasonably interfere with this paramount right to use the entire surface for a storage boom. *Morgan* v. *Boyes*, 65 Maine, 124. The only evidence upon this point is the statement in the report that since his purchase from the devisees of Egery, the defendant "has maintained a boom on the flats . . . . and fastened it by chains to the plaintiffs' piers." As between the parties the defendant was entitled to exercise his right to boom logs on the flats without restriction or limitation. If the plaintiffs' piers proved to be a material hindrance to the full exercise of this right, the defendant

might lawfully have removed the obstruction. If, perchance, the plaintiffs' piers occupied the only accessible or available points for the location of a boom, and the alternative was presented to the defendant of removing the piers or chaining his boom to them, the latter course being less injurious to the plaintiffs, could not reasonably be deemed an unlawful invasion of their rights. They could not, it is true, be required to maintain piers for the defendant's benefit and could remove them at their discretion. On the other hand, if the piers did not appreciably interfere with the maintenance of a boom for any purpose, the act of the defendant in subjecting them to his use as a matter of convenience, would be a technical infringement of the plaintiffs' rights.

In the entire absence of any evidence in regard to the manner in which the rights of the parties might have been consistently exercised in conducting their respective business operations, the entry must be,

*Plaintiffs nonsuit.*

LIBBEY, EMERY, FOSTER and HASKELL, JJ., concurred.
PETERS, C. J., did not sit.