ANDREW G. RING, and another,

*vs.*

JAMES P. WALKER, and another.

Penobscot.    Opinion May 10, 1895.

*Deed.    Easements.    Exceptions and Reservations.    Log Sluice.*

An easement that is strictly appurtenant to other land of the grantor is incapable of existence separate and apart from the particular land to which it is annexed, there being nothing for it to rest upon.

But an easement that is not appurtenant to other land, such as may be held or conveyed independently by the owner of it, and without reference to other land of the grantor, may be regarded as a right or interest capable of being transmitted by deed.

The fact that the language of an exception or reservation in a deed contains no words of inheritance, such as "heirs," is not necessarily the criterion by which to determine whether the rights thus excepted, or reserved, are for the life of the grantor only.

The distinction between an "exception" and a "reservation," is frequently obscure and uncertain, and the two expressions have to a great extent been indiscriminately employed.

Whether a particular provision is intended to operate as an exception or reservation is to be determined by the character rather than by the particular words used.

A permanent easement, which may be construed as an "exception" from the thing granted, needs no words of inheritance.

The following language appeared in deeds from a grantor to his grantees, viz: "Reserving, however, the right of erecting a log sluice and flume between my mill and the mills of said grantees, and of planking against their said mill to form one side of said log sluice and flume." "Also excepting and reserving the right of running logs through the premises from the river and of erecting and maintaining a log sluice from the mill pond parallel and contiguous to the said granted mill and the said Treat's Mill about five feet in width on the east side of said granted mill." *Held;* that this language, taken in connection with the facts and circumstances surrounding the case, constituted an exception rather than a reservation; that it was not a mere personal right, or easement in gross, but an interest retained in the grantor which he could legally convey; and which was good without words of inheritance being mentioned in the exception. It was a right inheritable and transferable and not one limited to a lifetime.

The same rules of construction apply to a reservation or exception in a deed as to an express grant.

And a grant of a principal thing carries with it everything necessary for the beneficial enjoyment of that which was granted.

In the case at bar, the right reserved was to erect and maintain a sluice five feet wide, and to plank on to the side of one of the mills to form one side of the sluice. When the mills were burnt, it was found "necessary" to lay a foundation ten feet wider than the original sluice in order to support a sluice of the width mentioned in the exceptions in the deeds. *Held;* that in doing this the defendants could not be held in trespass, as they did no more than was reasonably necessary for the enjoyment of their rights.

AGREED STATEMENT.

The case is stated in the opinion.

*C. A. Bailey,* for plaintiffs.

This right to a sluice was appurtenant to the lower property, not by virtue of anything in the reservation itself, but by legal intendment from its situation and relation to that property. But a way appurtenant to a particular lot cannot be used for any other. *Davenport* v. *Lampson,* 21 Pick. 72; *French* v. *Marston,* 4 Foster, 440; *Mendell* v. *Delano,* 7 Met. 180; *Green* v. *Canny,* 137 Mass. 64; *Moulton* v. *Faught,* 41 Maine, 298; *Dennis* v. *Wilson,* 107 Mass. 593.

Defendants are using this sluice to carry logs to Basin Mills, on a lot a mile below, on land never owned by Emerson, and to which this easement is not and cannot be appurtenant.

The reservation was made for the use of saw mills that might be built on the lower privilege, and resembles *Blake* v. *Clark,* 6 Greenl. 436, and *Moulton* v. *Trafton,* 64 Maine, 218. No

mills have stood on the lower mill site since 1876. Plaintiffs now own both the upper and lower properties — the servient and dominant estates. The easement would be merged if it had not ceased to be. The Emerson reservation is functus.

Mayo's reservation "as now had and enjoyed" of sluicing logs through the pond to the Basin Mills, "to said Mayo or his assigns," creates an easement in gross. *Amidon* v. *Harris*, 113 Mass. 59. As reserved by Mayo it was not appurtenant so long as he retained the right and did not own the Basin Mills. It was for his life only. *Curtis* v. *Gardner*, 13 Met. 457; *Sedgwick* v. *Laflin*, 10 Allen, 430; *Buffum* v. *Hutchinson*, 1 Allen, 60-61; *Dennis* v. *Wilson*, 107 Mass. 593; *Bean* v. *French*, 140 Mass. 229. Mayo died in 1876, and the right expired with him. Not an exception. *Ashcroft* v. *Eastern R. R. Co.* 126 Mass. 196.

The reservations below do not name any particular point, place or property, in connection with which the right reserved is to be exercised. They are purely easements in gross, to be exercised as the grantor will. Such easements have nothing to lean upon but themselves. They have not the advantage of a *terminus ad quem*.

But the Mayo reservation is of the right "as now had and enjoyed." The case finds that the mills which existed when that log sluice was built, and which supported it on either side were destroyed by fire; and that defendants have since entered upon the premises and built a structure fifteen feet wide, overlapping the space reserved for the old sluice five feet on either side — that is, occupying five feet of the old Emerson mill site, not before used for a sluice, making ten feet or more of that privilege taken, which is the trespass complained of in the first count of the writ; and five feet of the Treat privilege, which is the trespass complained of in the second count.

The sluice was then the necessary passage way for logs to the Union Mills below — Mayo superadded this easement in favor of the Basin Mills — but, as we have said, it was subject to the limitations of that sluice way, no right of constructing some

other sluice, however necessary it might become, was in that reservation. *Hoskins* v. *Brown*, 76 Maine, 70.

When the grantor adds words "as now or heretofore used by me," or words of similar import, the inquiry is not as to what is necessary but what is in use at the time, and it is to the use and not to the necessity that the evidence should be directed.

If it becomes impossible to exercise a right reserved, the easement is extinguished. *Ballard* v. *Butler*, 30 Maine, 94; *Hancock* v. *Wentworth*, 5 Met. 446.

*F. A. Wilson and C. F. Woodard*, for defendants.

SITTING : PETERS, C. J., WALTON, FOSTER, HASKELL, WHITE-HOUSE, STROUT, JJ.

FOSTER, J. This is an action of trespass, brought to determine the legal rights of the parties in relation to a log sluice through what is called the Bennoch dam on the Stillwater river at Orono, and the sluicing of logs through the same.

The plaintiffs are the owners of all the mills and mill privileges on that dam on the west side of the river. The defendants are the owners of Basin Mills, so-called, on the Penobscot river, about a mile below the junction of the Stillwater with the main Penobscot river.

The log sluice is through and over the plaintiffs' premises, and is maintained and used by the defendants to get their logs, coming down the Stillwater river, through the plaintiffs' premises, and on toward their own mills below — about one mile from the Bennoch dam.

The plaintiffs deny the right of defendants to encumber their property with this sluice, or to drive logs through their premises.

The defendants claim this right, not by reason of any public right or use of the stream, but by virtue of a right vested in them under certain deeds of conveyance whereby this right has been reserved to them and those under whom they claim.

In order to obtain a proper understanding of the case, and as bearing upon the legal rights of the parties, it becomes necessary to state, somewhat at length, the following facts :

In 1829, William Emerson was the owner of two mill sites on the Bennoch dam, and also another mill site or privilege a little lower down the Stillwater river and extending to its junction with the Penobscot river. On October 20, 1829, he conveyed to Nathaniel Treat and others one of these mill sites, and in his deed, after a description of the premises, is the following: "Reserving, however, the right of erecting a log sluice and floom between my mill and the mills of said grantees, and of planking against their said mill to form one side of said log sluice and floom."

On November 1, 1830, he conveyed to John Warren and another the other mill site on this dam, and in his deed conveying the same was the following: "Also excepting and reserving the right of running logs through the premises from the river and of erecting and maintaining a log sluice from the mill pond parallel and contiguous to the said granted mill and the said Treat's mill, about five feet in width on the east side of said granted mill."

On June 15, 1833, the said Emerson conveyed to R. M. N. Smyth the mill privilege lying lower down the Stillwater, and in his deed conveying this privilege appears the following: "Also hereby quitclaiming all my right of running logs through the premises conveyed to Warren from the river above, and of erecting and maintaining a log sluice from the mill-pond about five feet in width on the east side of said Warren's mills, said sluice to be parallel with and contiguous to said Warren's mills and Treat's mills."

In the year 1834, said Smyth built a log sluice through the Bennock dam between the Warren and Treat mills according to the grant of the right in Emerson's deed to him. This sluice was wholly within the bounds of the premises conveyed by Emerson to Warren and another, except that the easterly side of it was formed by planking against the Treat mill. This sluice was used by the defendants and those under whom they claim by putting logs through it and running them to the Basin Mills from 1854 to the present time.

While the two mills stood, the log sluice was between them

and was planked up against each, the space being about five feet in width. In 1887, after these mills were burned and could no longer support the sluice, the defendants, against the protest of the plaintiffs, put in a log foundation about fifteen feet wide and extending five feet each side beyond the original sluice on to land which had heretofore been covered by the mills, and this structure has been continued by them ever since with the sluice resting upon it. The interior width of the sluice is now about the same as when the mills were standing, or about five feet. The rest of the fifteen feet now occupied by the sluice is necessary for the foundation to support the walls of the sluice since the mills or their foundation were destroyed.

The trespass complained of is in relation to the five feet upon each side of the original sluice, in building and maintaining the foundation which is necessary to support the sluice.

The question involved is whether or not the defendants have the right to use and maintain this sluice.

The plaintiffs have the same comprehensive ownership that Emerson had before he parted with any of his mills or mill privileges, excepting such rights as the defendants may have.

The Basin Mills were never owned by Emerson. They were erected by said Smyth on a lot about a mile below the Bennoch dam. There is nothing in the case to show in what year these mills were erected, although it must have been long after Smyth's purchase from Emerson of the other privilege, and long after the sluice was built.

In 1845, Courtlandt Palmer of New York, became the owner of the Basin Mills property, and he and his brother after him continued to own the same, with Gideon Mayo of Orono, as resident agent, until sold to Samuel Veazie April 27, 1863.

August 1, 1870, the heirs of Veazie conveyed the Basin Mills property to James Walker, the defendants' ancestor under whom they claim.

On January 22, 1852, the title to the Warren mill, subject to the exceptions and reservations in Emerson's deed of November 1, 1830, came through sundry conveyances to said Gideon Mayo, who was at that time the resident agent of the Basin

Mills property and of its owners. At about the same time Mayo became the owner of the other mill privilege and water rights lying between Bennoch dam and the Basin Mills, and through which the sluice extended for the purpose of conveying logs through the Bennock dam to Basin Mills.

On May 1, 1860, Mayo conveyed the Warren mill and privilege to one B. B. Farnsworth and another, closing the description as follows : " Being the same premises conveyed by William Emerson to James Huse and Nathaniel and John Warren, November 1, 1830, . . . together with all the other privileges and appurtenances of said mill and water power conveyed by said Emerson's deed, and subject to all the reservations and conditions thereof,"—but, "Reserving, however, the right as now had and enjoyed of sluicing logs through the pond to the Basin Mills to said Mayo or his assigns."

On June 9, 1862, Mayo conveyed to Palmer, who then owned the Basin Mills, the following : "Rights of flowage of dam on Ayer's Falls near the mouth of Stillwater river ; also the log sluice and all rights, privileges and appurtenances connected with and belonging to the same, commencing at the Bennoch dam, so-called, and running thence through the Union mills' pond into the Basin."

In Palmer's deed to Veazie of the Basin Mills property those same rights were transferred to the said Veazie, and by his heirs to Walker, defendants' ancestor, in which deed appears this clause : "Ninth. Also the log sluice commencing at the Bennoch dam, so-called, and running thence through the Union mills' pond into the Basin, with all the rights and privileges thereof, and the right to maintain the same."

Now the contention of the plaintiffs is, that the reservations or exceptions which were made in and by the deeds of William Emerson to Warren and another and to Nathaniel Treat and others, in and of themselves, conferred no right upon anybody to build and maintain a sluice at the place designated for the purpose of putting logs through the same and thence to the Basin Mills ; that the rights secured by these reservations or exceptions, being without words of inheritance, should be held as an ease-

ment in gross limited to the lifetime of the grantor, or, at most, as an easement appurtenant to the other mill privilege owned by Emerson at the time of making these conveyances, lower down on the Stillwater and subsequently conveyed by him to said Smyth.

If these exceptions and reservations are to be considered as strictly appurtenant to the lower mill privilege, they would, of themselves, confer no right to the defendants or their predecessor in title to put logs through this sluice to the Basin Mills. For an easement that is appurtenant is incapable of existence separate and apart from the particular messuage or land to which it is annexed, there being nothing for it to rest upon. But if these rights and privileges were such as Emerson could convey independently of his lower mill-site privilege then owned by him, then it follows that they were conveyed by him to Smyth, and through Smyth, as well as Mayo, and have come to these defendants.

It will not be necessary to consider whether these rights under other and different circumstances might or might not be held to be appurtenant to this other mill site or privilege, inasmuch as we think they were such as Emerson had a right to convey independently of such privilege, either as an exception of a part of the thing granted, or, an interest in land for profit, commonly termed in the books, profit *a prende in alieno solo*, as in *Engel* v. *Ayer*, 85 Maine, 448.

The fact that the language of the reservations and exceptions contains no words of inheritance, such as "heirs," is not necessarily the criterion by which to determine whether these rights were for the life of the grantor only. It is a well-settled rule of the common law, it is true, that to create an estate of inheritance in land by deed to an individual, it is necessary, as a general rule, to use the word "heirs," and that no other words will supply the place of that. *Curtis* v. *Gardner*, 13 Met. 459. But this rule is not applicable and has never been properly applied to an "exception" in the correct sense of the term, to an easement appurtenant to other land of the grantor, or to a right of profit in land. *Engel* v. *Ayer*, *supra*, and cases cited.

The distinction between an "exception" and a "reservation" is frequently obscure and uncertain, and has not always been observed, and the two expressions have to a great extent been indiscriminately employed. Moreover, a reservation is often construed as an exception in order that the obvious intention of the parties may be subserved. *Winthrop* v. *Fairbanks*, 41 Maine, 307 ; *Smith* v. *Ladd, Id.* 316 ; *Bowen* v. *Conner*, 6 Cush. 132. Whether a particular provision is intended to operate as an exception or reservation is to be determined by the character, rather than by the particular words used. *Perkins* v. *Stockwell*, 131 Mass. 529, 530.

As the technical words of inheritance were not used in the reservations and exceptions mentioned in the deeds from Emerson to Warren and Mayo, it by no means follows that the interest or easement created thereby did not extend beyond the lifetime of the grantors. If, in construing the reservations in question, we lay out of view the technical rule, and take into consideration the intention of the parties as disclosed from the facts and circumstances attending the transactions, as well as the objects to be accomplished, the language discloses a clear and unmistakable intention to except a perpetual right, inherit· able and transferable, and not an easement in gross, or one limited to a lifetime.

The right to continue the use of the sluice was an almost absolute necessity, not only to the grantors, but to all subsequent owners of the premises. These rights were a part of the grantor's full dominion over the premises conveyed, and not, in effect, to be conferred on them by the grantees, as in *Ashcroft* v. *Railroad Co.* 126 Mass. 196. They were something which these reservations in effect excepted from the operation of the grant. In such cases the rule is well settled that a permanent easement may be made without words of inheritance. *Engel* v. *Ayer, supra.*

In *Kennedy* v. *Scovil*, 12 Conn. 326, the deed contained these words—"Always provided that this deed is given on condition that the grantors are to have and retain the privilege of conveying water from said dam similar to the one now in use," etc.,

without words of inheritance or limitation. The court said : " What did the parties intend by the reservation in question ? And for the purpose of ascertaining the intention, it is proper to take into consideration the condition of the property, and the circumstances of the parties in relation thereto. . . . The objection is that the use is reserved to them without naming heirs and assigns. . . . It is true that the right is reserved to them without words of inheritance, and without naming their assigns. But it becomes material to inquire for what purpose the reservation was made."

The rule that the intention shall prevail over mere words is sustained by authority and good sense. In adopting and applying this rule, courts have frequently in effect treated such "reservations" as if they had been "exceptions" in the proper sense of the word. As before stated, the words " reserve " and " reserving," and "except" and " excepting " in deeds are often used interchangeably, and it is oftentimes difficult to determine which was intended except by a reference to the subject matter, and the surrounding circumstances. *Barnes* v. *Burt*, 38 Conn. 542. And this depends more upon the nature and effect of the provision itself than upon the words employed. *Gale* v. *Coburn*, 18 Pick. 397, 400. A way, or a right of way, reserved has often been treated as if it had been " excepted " out of the grant, and on principle we see no reason why this should not be done in the present case to effectuate the plainly manifested intent of the parties. *Winthrop* v. *Fairbanks*, *supra* ; *Smith* v. *Ladd*, *supra*. In *Bowen* v. *Conner*, 6 Cush. 132, Shaw, C. J., says : " Upon principle it appears to us that this right plainly intended to be secured to the plaintiffs, can be legally secured in the manner adopted in this deed, treating the right secured as an ' exception.' "

In *Winthrop* v. *Fairbanks*, *supra*, it was said " that in giving constructions to instruments in writing, the intention of the parties is to be effectuated, and if a deed cannot effect the design of them in one mode known to the law, their purpose may be accomplished in another, provided no rule of law is violated. Hence, the distinction between an exception and a reservation

is so obscure in many cases, that it has not been observed ; but that which in terms is a reservation in a deed is often construed to be a good exception, in order that the object designed to be secured may not be lost." *Wood* v. *Boyd,* 145 Mass. 176, 179 ; *Stockwell* v. *Couillard,* 129 Mass. 231, 233.

Can there be any doubt that, in the light of the facts stated, it was the intention of Emerson and so understood by his grantees, to retain a permanent easement or interest in the premises granted as distinguished from a mere easement in gross, temporary and personal ? His subsequent conveyance of this easement to Smyth is indicative of the intention with which it was created. Moreover, in his deed to Warren and another the language used is not only " excepting and reserving " the right, but of " erecting and *maintaining* " the sluice.

Whatever may be said as to the intention of Emerson in reference to excepting these rights from his grant, with still greater force may it be applied to the conveyance from Mayo wherein he conveys to Farnsworth " subject to all the reservations and conditions," named in Emerson's deed, and " reserving however the right as now had and enjoyed of sluicing logs through the pond to the Basin Mills to said Mayo or his assigns."

The right as then had and enjoyed is the same which the defendants and their predecessors have exercised. This right was not only to Mayo but to his assigns. And here in ascertaining the intention of the parties, the circumstances of the case are to be taken into consideration,— the use made of the property,— the condition as well as the situation of the Basin Mills property and its dependence upon this right to obtain a stock of logs.

With all these facts and circumstances considered, the " reservation " should be considered in the nature of an exception, retaining in the grantor something out of the thing granted which remained in him, a right inheritable and transferable, not a personal easement limited to a lifetime, nor one strictly appurtenant to other property of the grantor and existing only in relation to it,— a right which was subsequently conveyed by him to the owners of the Basin Mills property by his deed to

Palmer of June 9, 1862, wherein he conveyed the log sluice, and all rights, privileges and appurtenances connected with and belonging to the same, commencing at the Bennoch dam and thence running through the Union Mills pond into the Basin.

As a reservation, in the strict sense of the term, it would have died with the grantor ; but the necessities of the Basin Mills property would still continue notwithstanding his death.    What reason, therefore, in view of that necessity should the parties have had in making the existence of this easement dependent upon his life, and not upon the continuance of the necessity so long as that might last, and whoever might become the owner of the Basin Mills ?

It might afford some light upon the intention of the parties were we to consider the use made of this sluice, not only by the predecessors in title of the defendants, but of all parties affected by such use and owning the property through which it ran.

From 1854 down to 1887, when the Warren and Treat mills were destroyed by fire, this sluice was used in the same manner as it had been by the defendants' predecessors, without any question on the part of anybody.

As was remarked in *Smith* v. *Ladd, supra,* "the intention of the parties to the deeds containing the reservations mentioned is too manifest to be misunderstood." *Moulton* v. *Trafton,* 64 Maine, 218.

The case finds that the mills which existed when the log sluice was built, and which supported it on each side, were destroyed by fire in 1887, and that the defendants have necessarily had to build a foundation about ten feet wider than the original sluice, overlapping the space reserved for the old sluice five feet on either side, and this is the trespass complained of.

The justification which they present is that, in the original reservation or exceptions of Emerson, the right retained by him was to erect and *maintain* a sluice, and that it has become necessary, as the case shows, to take this amount of space, since the destruction of the mills, to "maintain" the sluice.

It is undoubtedly familiar law that the same rules of construction apply to a reservation or exception in a deed as to an express

grant. *Blake* v. *Madigan*, 65 Maine, 522, 529 ; *Ashcroft* v. *Eastern Railroad*, 126 Mass. 196, 199.

Moreover, it is an established rule of construction that the grant of a principal thing shall carry with it everything necessary for the beneficial enjoyment of that which is granted. *Hammond* v. *Woodman*, 41 Maine, 177 ; *Gray* v. *Water Power Co.* 85 Maine, 526, 530 ; *Butler* v. *Huse*, 63 Maine, 447, 453. Thus, the grant of a "mill site" conveys by implication the water power, and the right to maintain a dam for the beneficial appropriation of the water. *Stackpole* v. *Curtis*, 32 Maine, 383. So where the use of a thing is granted, everything essential to that use is granted also, and there is an implied authority to do all that is necessary to secure the enjoyment of such easement. *Pomfret* v. *Ricroft*, Wm. Saund. 323, note 6 ; *Prescott* v. *Williams*, 5 Met. 429 ; *Prescott* v. *White*, 21 Pick. 341 ; *Warren* v. *Blake*, 54 Maine, 276, 286.

The case of *Prescott* v. *White, supra*, was where the owner of a mill to which there had been attached a raceway or artificial canal for conducting off the water, and without the free and unobstructed current of which the mill could not be worked, and such canal passed through the land of another, it was held that the owner of the mill had the right to enter upon the land through which the raceway passed and to clear out the same, doing no unnecessary damage. The language of Shaw, C. J., in delivering the opinion of the court is this : "When the use of a thing is granted, everything is granted by which it may be enjoyed. It follows as a necessary consequence, that the nonappearing grant carried with it to the grantee the right to do all necessary and proper acts to keep the raceway in a condition fit for the purposes for which it was intended. If it passes through the grantor's land, it carries an implied authority and license to enter upon the land to examine and clear the canal in a reasonable and proper manner, and of what is reasonable, the usual and customary mode is good evidence." As bearing upon this question the following authorities may be cited : *Richardson* v. *Bigelow*, 15 Gray, 154, 157 ; *Baker* v. *Bessey*, 73 Maine, 472,

478 ; *Prescott* v. *Williams*, 5 Met. 429 ; *Hammond* v. *Woodman*, 41 Maine, 177, 203.

It is a rule of law that the one who enjoys the benefit of an easement in the premises of another must be at the expense of maintaining it. Easements impose no obligation, as a general rule, upon those whose lands are thus placed in servitude, to do anything. *Taylor* v. *Whitehead*, 2 Doug. 745 ; *Richardson* v. *Bigelow*, 15 Gray, 154.

In the present case, the destruction of the mills which formed one of the chief supports of the sluice was in no way attributable to the defendants or their predecessors in title. Nor is there any intimation, from the facts disclosed, that in building the present foundation anything more was done than was reasonably necessary to support the sluice, which is of the same interior dimensions as that mentioned in the deeds to which we have referred, or that it was done in an unreasonable manner, (*Richardson* v. *Bigelow*, 15 Gray, 154,157,) ; but, on the contrary, the case shows that the extra five feet in width upon each side were "necessary for the foundation to support the walls of the sluice since the mills or their foundations were destroyed." No illegal invasion upon the property of the plaintiffs is shown.

*Judgment for the defendants.*