THEODORE A. FRYE ET AL., APPELLEES, V. ARTHUR SIBBITT ET AL., APPELLANTS.

17 N. W. 2d 617

FILED FEBRUARY 9, 1945. No. 31835.

*Johnson & Johnson, Suhr & Pierce* and *Perry, Van Pelt & Marti,* for appellants.

*Dryden & Jensen, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This action as originally instituted was by petition in equity wherein Theodore A. Frye and John Haney were plaintiffs against Arthur Sibbitt and Edna Billings, administrators of the estate of John P. Sibbitt, deceased, and Arthur Sibbitt, Edna Billings, Almeda Sibbitt and Ola Gertrude Sibbitt, defendants. After the commencement of the action one of the plaintiffs died, also after the commencement of

the action the defendants, Almeda Sibbitt, Arthur Sibbitt and Ola Gertrude Sibbitt died. As to the deceased plaintiff and the deceased defendants the action was revived, and the action proceeded with a properly substituted plaintiff and properly substituted defendants. The defendants are appellants here and the plaintiffs are appellees.

The declaration of the petition is on nine causes of action all growing out of an indenture dated and recorded October 17, 1916, whereby John Haney and Lizzie M. Haney, his wife, predecessors in interest of the plaintiffs, granted to John P. Sibbitt, Almeda Sibbitt, Arthur C. Sibbitt and Ola Gertrude Sibbitt, a perpetual easement for the flow of water onto real estate belonging to John Haney, and described in the indenture, from land belonging to the Sibbitts and also described in the indenture. The four Sibbitts named were the predecessors in interest of the present defendants.

By the indenture it was contemplated that there had been constructed a ditch from the Sibbitt lands to the Haney lands which should be maintained from the date of the indenture henceforth for the flow of water onto the Haney lands. The consideration of the indenture flowing to Haney was a maximum payment of $625 per year. This maximum was subject to reduction by the cutting of hay. In order to bring about a reduction of payment below $625 Haney was required to make every reasonable effort to cut and stack as much hay as possible. For every ton of hay cut and stacked up to 125 tons in any year a credit of $5 per ton was allowable against the $625. There appears to have been an enclosure within what was called a meadow fence. Hay cut within this enclosure alone was to be considered in reduction of the annual maximum payment. It was provided further that each year in October the parties should meet in Hyannis, Nebraska, and there estimate and settle upon the amount due from the Sibbitts to Haney. The plan for settlement is set forth in the indenture. Its details do not require statement here. In the indenture it was provided that the Sibbitt lands should be known as the dominant and that those of Haney should be the servi-

ent estate. In the indenture the intention as to the estates or interests conveyed was twice declared as follows: "WHEREAS, the parties hereto are desirous of entering into an agreement which will be binding upon them and upon their heirs, assigns and successors, and upon all of the real estate hereinbefore described, * * * ; * * * IT IS FURTHER AGREED, and the intent of this indenture is that the obligations hereby imposed upon the parties hereto shall also attach, and they are hereby attached, to the estates aforesaid from this date forth in perpetuum."

The land which was owned by Haney and was the subject of the indenture was sold and transferred by warranty deed by Haney and his wife to Theodore A. Frye on October 27, 1919. This was followed on February 13, 1933, by an assignment of the rights under the easement indenture by the grantors to the grantees in the deed. On May 5, 1931, Frye sold a portion of the land to the State of Nebraska, Game and Parks Commission. It appears that the land so sold was 345 acres, or all but seven acres of that portion of the acreage which was described in the indenture of 1916 as being within the pasture area fence.

The payments provided for by the indenture were made regularly to and including the year 1930. Although demand was made in 1931 no payment was made for that year or for any year thereafter.

On August 22, 1936, Theodore A. Frye and Kleo Frye, his wife, executed an instrument, the purport of which was to assign to John Haney a one-half interest in the easement of October 17, 1916. The assignment was recorded August 28, 1936. It was the intent of the parties that by the assignment John Haney should acquire a half interest in the payments flowing from the dominant to the servient estate.

This action was commenced on July 3, 1940, by the then purported owners of the interest of the servient estate in the easement. The nine causes of action are for the years 1931 to 1939 inclusive. Each is for $625 with interest. The theory of plaintiffs is that the annual amounts from the due date thereof became an equitable lien upon the domi-

nant estate. In effect, the action is for an accounting of the various amounts and for foreclosure of the lien or liens.

A trial was had to the court which resulted in a decree finding that there was due on the nine causes of action $8,-049.16. A lien was decreed for this amount and strict foreclosure was allowed. It was from this decree that the defendants have appealed.

The defendants have assigned seven errors as grounds for reversal. They are: (1) The court erred in overruling the demurrers of the defendants; (2) the court erred in holding the rights and obligations under the easement contract of October, 1916, divisible or severable; (3) the court erred in awarding plaintiffs a lien against defendants' real estate; (4) the court erred in not applying a five-year statute of limitations; (5) the court erred in finding that there was not an easement; (6) the court erred in determining the amount due plaintiffs from defendants as a first lien against defendants' real estate; and (7) the court erred in not applying the doctrine of laches.

The demurrers which are the basis of the first assignment were predicated on the proposition that the petition did not state a cause or causes of action. The determination depends upon the question of whether or not there was stated a right of recovery in consequence of failure to pay on the part of defendants in conformity with the provisions of the indenture. Neither the legal capacity to sue nor the propriety of the joinder of the parties plaintiff is presented by this assignment. In this is involved a determination of, first, the question of whether or not the petition declares a right of recovery and, second, whether or not the remedy sought is available to the plaintiffs. This latter must be resolved in favor of plaintiffs since they have pleaded their case on the sole theory that they are owners of the rights flowing to the servient estate and as such owners are entitled to the adjudication of lien against the dominant estate as they are denominated in the indenture and in consequence seek accounting and foreclosure. The question of whether or not this is true is not apparent on the face of the pe-

tition. The declaration of the petition therefore must be taken as true against the demurrer. The petition does not in any sense seek the enforcement of a personal obligation.

In an approach to a determination of the question of whether or not the petition declares a right of recovery it becomes necessary to ascertain the character or quality of the right which plaintiffs seek to enforce in this action, that is of deferred payments or benefits flowing to the grantor of an easement or his successors and assigns. The decisions are not agreed on the nomenclature.

The Massachusetts courts call it "equitable servitude." In *Everett Factories & Terminal Corporation v. Oldetyme Distillers Corporation,* 300 Mass. 499, 15 N. E. 2d 829, 118 A. L. R. 965, a case presenting a situation similar to the one presented here, it was said: "It follows that the obligation to make annual payments as provided in the original deed is imposed as an equitable servitude on the premises and appurtenant rights granted by such deed to which the defendant has succeeded. This obligation, therefore, may be enforced in equity against the defendant to the extent that the performance of the duty of making the annual payments may be charged upon these premises and appurtenant rights. But it cannot, by reason of equitable servitude, be enforced as a personal obligation of the defendant."

The New York courts call it a "covenant." In *Neponsit Property Owners' Assn. v. Emigrant Industrial Savings Bank,* 278 N. Y. 248, 15 N. E. 2d 793, 118 A. L. R. 973, 118 A. L. R. 982, annotation, a case also similar to the case at bar, it was said: "Looking at the problem presented in this case from the same point of view and stressing the intent and substantial effect of the covenant rather than its form, it seems clear that the covenant may properly be said to touch and concern the land of the defendant and its burden should run with the land."

The appellants in their presentation contend that the right which appellees seek to assert is an "easement appurtenant" to the real estate described as the servient tenement and that in this action it should be so treated. The appel-

lees appear to be unwilling to attach to their claimed right a name. They insist that whether it be called easement contract, covenant real, equitable servitude, profit à prendre, or go nameless is a matter of no consequence so far as the right of recovery is concerned. The trial court in the following words found that it was not an easement: "It is not an easement at all. It is more in the nature of a rental."

The significance of appellants' contention that an "easement appurtenant" is involved is that under the authorities on which they rely there could be no separation or division of the right of recovery from the lands to which the easement attached. In other words as applied to this case the owner of the land would have the sole right to maintain action under the indenture, whereas it is unquestioned and unquestionable that one of the plaintiffs is not a party to the title to the land and appellants contend that neither plaintiff is party to more than a few acres of the land actually involved.

It can hardly be doubted that if the obligation to make payments under this indenture to the owner of the servient tenement falls within the true meaning of the term "an easement appurtenant" it would pass by deed of conveyance to the land and the holder of the title alone could maintain action under the indenture. In *Agnew v. City of Pawnee City,* 79 Neb. 603, 113 N. W. 236, it was said: "An easement will pass by a deed or grant of conveyance, even if the word 'appurtenance,' or a similar expression, is not used in the instrument, if. it is apparent to an ordinary observer, and naturally and necessarily belonged to the premises." In *Smith v. Garbe,* 86 Neb. 91, 124 N. W. 921, it was said: "An easement appurtenant to land will pass by a conveyance, although the words 'with the appurtenances' are not used." These two statements were quoted with approval in *Neilson v. Leach,* 140 Neb. 764, 1 N. W. 2d 822.

We however cannot agree that this is an easement appurtenant or any other kind or character of true easement.

In Black's Law Dictionary (3d ed.) p. 636, an easement is defined as follows: "A right in the owner of one parcel

of land, by reason of such ownership, to use the land of another for a special purpose not inconsistent with a general property in the owner." Other definitions of easement are to be found in this dictionary, in texts on real property and in the decisions of various courts and in some respects they differ, but in all of them there is one common and essential element. They all contemplate that before an easement may exist there must be *a right in land.* The right even to take of the land or its produce does not rise to the dignity of a true easement. Such a right is termed and defined as a "profit à prendre."

Black's Law Dictionary (3d ed.) p. 1440, defines and explains "profit à prendre" as follows: "A right exercised by one man in the soil of another, accompanied with participation in the profits of the soil thereof. * * * *Gadow v. Hunholtz,* 160 Wis. 293, 151 N. W. 810, 811, Ann. Cas. 1917D, 91. The term includes the right to take soil, gravel, minerals, and the like from another's land; *Munsey v. Mills & Garritty,* 115 Tex. 469, 283 S. W. 754, * * * . Profits à prendre differ from easements, in that the former are rights of profit and the latter are mere rights of convenience without profit. * * * See *Payne v. Sheets,* 75 Vt. 335, 55 A. 656; *Black v. Elkhorn Min. Co.,* (C. C.) 49 F. 549; *Bingham v. Salene,* 15 Or. 208, 14 P. 523, 3 Am. St. Rep. 152; *Pierce v. Keator,* 70 N. Y. 422, 26 Am. Rep. 612.

The term profit as used in the definitions quoted and the cases cited does not embrace money to be paid for a use but only a profit to be obtained out of the produce of the land or out of some physical severance.

It appears clearly from these definitions and these cases that the only substantial distinction between "profit à prendre" and the situation created by the indenture here is that in the former the profit flowing to land has a tangible measurement whereas in the latter the measurement is intangible or in money.

In this light we observe no compelling reason why they should receive different treatment when we come to consider the question of whether or not they are severable or divisible from the land of their original attachment.

It has been held that where there is a profit à prendre which consists in a right to take a profit from land it is treated as an estate and may pass by inheritance or conveyance. See *Engel v. Ayer,* 85 Me. 448, 27 Atl. 352; *Ring v. Walker,* 87 Me. 550, 33 Atl. 174. We conclude that the reasons supporting this holding are sound and, as already indicated, that the same rule should apply here. We hold, therefore, that the rights of the servient tenement were severable and divisible from the tenement and were the subject of conveyance.

It follows necessarily and of course, then, that the owner or owners of the right to profit secured to the servient tenement by the indenture and flowing from the dominant tenement had the right, as his or their interests appeared, to maintain action for recovery of the profit.

The question of whether or not the court erred in awarding a lien against the dominant tenement is dependent upon the question of whether or not the profit contemplated was a charge against the real estate and not a personal obligation. There can be no question that by the language of the indenture the parties intended that it should be a charge against the real estate. The indenture is specific and conclusive in that regard.

On this question in *Everett Factories & Terminal Corporation v. Oldetyme Distillers Corporation, supra,* it was said: "It follows that the obligation to make annual payments as provided in the original deed is imposed as an equitable servitude on the premises and appurtenant rights granted by such deed to which the defendant has succeeded. This obligation, therefore, may be enforced in equity against the defendant to the extent that the performance of the duty of making the annual payments may be charged upon these premises and appurtenant rights. But it cannot, by reason of equitable servitude, be enforced as a personal obligation of the defendant."

In *Neponsit Property Owners' Assn. v. Emigrant Industrial Savings Bank, supra,* it was said: "Looking at the problem presented in this case from the same point of view

and stressing the intent and substantial effect of the covenant rather than its form, it seems clear that the covenant may properly be said to touch and concern the land of the defendant and its burden should run with the land."

In accordance with the declared intention of the parties and purport and effect of these decisions we hold that whatever rights plaintiffs had were enforceable as a lien against the dominant tenement.

The area of the servient tenement as denominated in the indenture is not definitely ascertainable from the record. One witness indicates that it contained 1,135 acres. Approximately 352 acres were directly affected by the flow of water from the dominant tenement. Approximately 345 acres of this were sold to the State of Nebraska, Game and Parks Commission, as has been pointed out, on May 5, 1931. Appellants contend that the right to enforce the obligation of the dominant tenement, if any existed, thereafter belonged to the land thus directly affected to the exclusion of all of the other land described as the servient tenement, or to the state of Nebraska.

We cannot agree with the appellants' attempted limitation of land to which the right of recovery attaches. By the terms of the indenture the right is extended to all of the land described as the servient estate. There is nothing which limits it to the area directly affected by the flow of water. The only significance of a separate designation of the area affected by flow of water is that the contemplated effort to reduce the amount of annual payments was limited to this area.

The intention of the parties as disclosed by the indenture cannot be ignored. This requires us to hold that the payments for the easement belong to the lands in their entirety described in the indenture as the servient estate. It follows that the owner or owners of the servient estate or their assigns, as their interests appeared at the time or times when payments became due, had a right of action therefor.

Having concluded that the state of Nebraska was not the

sole party entitled to action it becomes necessary to determine who were proper parties plaintiff with regard to the several causes of action.

Under the evidence in this case, for the period covered by the nine causes of action, Theodore A. Frye held the title to the lands in question with the exception of approximately 345 acres, the title to which stood without reservation in the name of State of Nebraska, Game and Parks Commission, from May 5, 1931, to June 10, 1940, when by decree of court the deed was reformed so as to reserve to Theodore A. Frye and Kleo Frye, husband and wife, their heirs, executors and assigns, all right, title and interest in and to the sums due under the indenture herein.

The appellants contend that the court was without jurisdiction to reform the deed to the state of Nebraska and that notwithstanding the attempted reformation the state of Nebraska became and still is the owner of the directly affected lands. They contend that authority has never been granted by the legislature for the prosecution of any such action against the state.

If such authority exists it must be found in the following from section 24-319, R. S. 1943, granting the right to bring action against the state: " * * * all cases where the State of Nebraska shall have a lien or any other interest, apparent or real, upon or in any real estate in said state, wherein any party may desire to have said lien or interest of the state fixed and determined or foreclosed and cut off; * * * ."

Statutes authorizing suits against the state are to be strictly construed. In *Anstine v. State* 137 Neb. 148, 288 N. W. 525, this court quoted with approval the following from 59 C. J., sec. 460, p. 303: " * * * it is usually said that statutes authorizing suit against the state are to be strictly construed, since they are in derogation of the state's sovereignty. Consequently, it is generally essential that the consent of the state to be sued be given expressly or by clear implication, * * * ." It appears that plaintiffs' action under the requirement of this rule is authorized by this statute. The state did have an interest, apparent or real,

upon and in real estate which plaintiffs by their action were seeking to have fixed, determined and cut off. Nothing in the record appearing to the contrary, we must assume that the court had jurisdiction and no appeal having been taken, the decree in that action must be accepted as final and conclusive upon the issues determined. Further, we do not observe that the rights of appellants or their predecessors in interest were in any wise prejudiced by the decree in that action.

In the light of this reasoning it becomes necessary to hold that the transactions involving sale of a part of the land to the state of Nebraska and the action to reform the deed to conform to the intention of the parties were effective for the purposes declared in the decree. It follows then that the parties plaintiff being the owners and holders of the entire interest they were proper parties plaintiff.

Next we come to appellants' assertion that the court erred in awarding plaintiff a lien against defendants' real estate.

The effect of the findings hereinbefore made is to say that the nine causes of action pleaded were proper causes of action by plaintiffs against the defendants. This is subject, however, to our finding and holding with regard to the effect of the appropriate statute of limitations. We hold here that on causes of action, where right of recovery was proved, instituted in time, plaintiffs were entitled to a lien upon the real estate of defendants described in the indenture.

The appellants urge that the five-year statute of limitations is applicable to an action for recovery of payments becoming due and payable under this indenture. The court applied the ten-year limitation or the one applicable to actions for foreclosure of real estate mortgages and for recovery of title and possession of real estate, or section 25-202, R. S. 1943, which is in part as follows: "An action for the recovery of the title or possession of lands, tenements or hereditaments, or for the foreclosure of mortgages thereon, can only be brought within ten years after the cause of

action shall have accrued; * * * ." Appellants, on the other hand, contend that the limitation of section 25-205, R. S. 1943, as follows, is applicable: "An action upon a specialty, or any agreement, contract or promise in writing, or foreign judgment, can only be brought within five years."

We are constrained to hold that the limitation of the latter and not the former section is applicable here. In *Tibbetts v. Morris*, 42 Ia. 120, the court was called upon to determine the applicability of statutory provisions similar to those under consideration here. In the opinion in that case it was said: "This is not an action for the recovery of real property, but to recover for the use and occupation of real estate. * * * Where an independent action is instituted, simply for the purpose of recovering for the use and occupation, the action falls under the general statute of limitations, which, it is not denied, is five years."

This precise question has not previously been before this court but in other analogous situations it has been held that section 25-205, *supra,* applied. It applies in an action for breach of covenant of warranty in a deed (*Campbell v. Gallentine,* 115 Neb. 789, 215 N. W. 111), and for action on a covenant against encumbrances (*Bellamy v. Chambers,* 50 Neb. 146, 69 N. W. 770; *Johnson v. Hesser,* 61 Neb. 631, 85 N. W. 894).

It appears that there is another and convincing reason why the limitation of mortgages is not applicable when that statute is analyzed in the light of other limitation provisions of our statutes. Article 2, chapter 25 of the Code of Civil Procedure, appearing in R. S. 1943, pertaining to limitations of actions, contains 20 sections, 12 of which prescribe the limitation of particular actions. One provides the limitation of all actions not specified in the other 12. It would appear, therefore, that it was the legislative intent that a cause of action would not be controlled by any of the specific limitation sections unless it came clearly within the descriptive terms of the section. If this be true it cannot be contended that these causes of action fall within the descriptive language of section 25-202, *supra.* Appellees claim

only an "equitable lien" growing out of an agreement to pay for use and occupancy under a perpetual easement. This reasoning causes the limitation of section 25-205, *supra*, to be applicable.

By the terms of the indenture, separate causes of action came into being after the month of October of each year. It follows therefore that since action was not commenced until July 3, 1940, that all causes of action accruing more than five years before that date are barred. Plaintiffs have only their causes of action for the years from 1935 to 1939, inclusive.

It is contended substantially by appellees that they were unable to commence action until after the decree reforming the deed to the state of Nebraska. This contention is without merit. No authority is cited and we have found none, the purport and effect of which would justify a holding that the time involved in the correction of a mutual mistake made by the parties to that action would toll the statute of limitations as to the causes of action which are the subject of this action.

As to the sixth assignment it becomes apparent that the court erred in adjudging a lien against the real estate of defendants on the first four causes of action. On them the decree should have been in favor of defendants. On the fifth, sixth, seventh, eighth and ninth the decree in favor of plaintiffs was proper if the evidence was sufficient to sustain the finding of the decree.

Neither the decree nor the bill of exceptions makes clear what computation was used in arriving at the amounts due on these several causes of action but the briefs indicate that the court allowed $625 each for the fifth, sixth and seventh causes of action, $425 for the eighth and $400 for the ninth, with interest on each at the rate of six per cent per annum to date of the decree. Analysis supports this indication.

The weight of the evidence supports the conclusion that no hay was available for cutting and stacking in the years 1935, 1936 and 1937. The evidence supports a further conclusion that not more than 40 tons could have been cut and stacked in 1938 and not more than 45 in 1939.

Appellants adduced evidence in support of a contention that inability to cut and stack hay for the five years was occasioned by other causes than flow of water onto the servient estate contemplated by the indenture. This evidence was undoubtedly proper and if it had been of sufficient weight would have been *pro tanto* a defense. However, from an examination of the record we are convinced that 'plaintiffs have sustained the burden of proof on these five causes of action.

In the light of the determination of the other questions, the question of laches requires no separate consideration. We deem it to be without merit.

It is therefore the opinion of this court that the decree should be and is reversed and dismissed as to the first, second, third and fourth causes of action and affirmed as to the fifth, sixth, seventh, eighth and ninth. The cause is remanded to the district court with directions to enter decree in conformity herewith.

In case appellants shall fail to pay the amount found due on the said five causes of action with interest thereon within 20 days from the date of entry of the decree directed, satisfaction thereof shall be had in the manner and form as provided by the original decree.

AFFIRMED IN PART AND REVERSED IN PART, WITH DIRECTIONS.