In the Matter of the Application of WILLIAM BROOKFIELD, as Commissioner of Public Works of the City of New York, Respondent, to Acquire Certain Real Estate for the Purpose of Protection of the Water Supply of the City of New York.

DE WITT C. SARLES, Appellant.

1. RIPARIAN RIGHTS — WHEN A DEED OF LAND BOUNDED BY, AND SURROUNDING, INLAND POND DOES NOT CONVEY THE LAND UNDER WATERS OF THE POND. Where the owner of a pond, or a portion thereof, and of the lands surrounding the same, executed and delivered to the owner of a mill site upon a river through which flowed the waters from the pond, a deed containing a description bounding all of the lands surrounding the pond owned by the grantor, followed by the words "being all the land

on both sides of Byram River and Byram Pond that will be overflowed by the waters of Byram River and Byram Pond in consequence of the erection of a dam across said Byram River, southerly of lands hereby conveyed, of sufficient height to raise the waters in Byram Pond eight feet and two-tenths above its present level and the above-described land is conveyed * * * only for the purpose of being flowed by said pond," which deed was followed by another from the same grantor to the same grantee containing substantially the same description and provisions contained in the former deed, with the exception that it gives the right to raise the water of the pond twelve feet instead of eight; such deeds convey the land on the sides of the pond for flowage purposes only, not that of the pond itself, i. e., the land bordering upon and bounded by the waters of the pond which might be overflowed by the raising of the dam, leaving the title to the land then under the waters of the pond remaining in the grantor.

2. SAME — WHEN DEED OF LAND SURROUNDING POND CONVEYS EASEMENT, OR RIGHT, TO OVERFLOW SUCH LAND WITH WATERS COLLECTED AND STORED BY DAM, LEAVING TITLE AND BENEFITS THEREOF IN GRANTOR — EFFECT OF AGREEMENT BY GRANTOR TO BUY BACK EASEMENT IF NOT USED BY GRANTEE. The ordinary and formal parts of such deeds, in terms including all hereditaments and appurtenances belonging to the land thereby conveyed, must be construed with the provision limiting the land conveyed to "all the land on both sides of Byram River and Byram Pond that will be overflowed * * * in consequence of the erection of the dam across said Byram River," and with the provision that the land is conveyed "only for the purpose of being flowed by said pond," which provisions are the essential features, the real essence of the contract, and should be given force and effect in preference to such formal parts; so construed, the deeds conveyed to the grantee a mere easement to have the waters collected by the dam overflow such land, leaving the fee, possession and use thereof, in connection with the upland, in the grantor, subject only to such right of flowage; and a subsequent provision of such deeds that in case the grantee should not use the land thereby conveyed for flowage purposes, then the grantor, his heirs and assigns, should buy back such lands at a price to be agreed upon, or settled by arbitration, is not a condition subsequent to the revesting of the title in the grantor, but is a mutual agreement of the parties which could be enforced by either and does not affect the question as to the interest or title conveyed by the deeds.

3. SAME — CONDEMNATION OF RIGHTS OF OWNERS OF WATERS OF INLAND POND AND RIGHTS OF OWNERS OF LAND SURROUNDING THE POND AND UNDER WATERS OF THE SAME IN PROCEEDING BY CITY OF NEW YORK UNDER CHAPTER 189 OF LAWS OF 1893 — WHEN OWNER OF BED OF POND ENTITLED TO SUBSTANTIAL DAMAGES THEREFOR. Where the city of New York, in a condemnation proceeding instituted under the statute

(L. 1893, ch. 189), providing for the protection of the sources of its water supply, has acquired the right of the grantee named in the deeds in question to maintain the dam across Byram river and use the waters collected and stored therein, and has also acquired from the successor in title of the grantor named in such deeds the title to the lands surrounding Byram pond, for which the commissioners of appraisal awarded substantial damages, but awarded only nominal damages for the bed of the pond, he is entitled to a new appraisal awarding him substantial conpensation for his right to use the pond in connection with the upland for domestic purposes, the harvesting of ice, etc., and also for his right to repurchase his interest in the lands surrounding the pond as provided for in the deeds, since such rights are real, entitling him to substantial damages upon their being taken from him, pursuant to the provisions of the act under which the condemnation proceedings were instituted.

*Matter of Brookfield*, 78 App. Div. 520, reversed.

(Argued June 2, 1903; decided October 6, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 21, 1903, which reversed an order of Special Term setting aside a portion of the report of commissioners of appraisal.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*James Dunne* for appellant. The grants to Josiah Wilcox by the latter's deeds were simply grants of dry land for the express purpose of being flooded by the waters of Byram pond, and did not carry with them the fee to any part of the bed of the pond. (*French* v. *Carhart*, 1 N. Y. 96; *Mott* v. *Mott*, 68 N. Y. 246; Gould on Waters [3d ed.], §§ 199, 200, 319.) The language of the description of the Lyon's deeds, "all the lands on both sides of Byram river and Byram pond that will be overflowed" in raising the waters of the pond twelve feet above the natural level, does not embrace title to the bed of the pond. (*Child* v. *Starr*, 4 Hill, 369; *Starr* v. *Child*, 5 Den. 590; *Halsey* v. *McCormick*, 13 N. Y. 296; *K. C. F. Ins. Co.* v. *Stevens*, 87 N. Y. 287; *Holloway* v. *Southmayd*, 139 N. Y. 390; *Deering* v. *Reilly*, 167 N. Y. 184; *Clarkson*

v. *Hathaway*, 15 Johns. 447; *Nostrand* v. *Durland*, 21 Barb. 478; *Roberts* v. *Baumgarten*, 110 N. Y. 380.) Title to the bed of the pond has not passed to Josiah Wilcox, or his successor in interest, either (1) by way of adverse possession under color of title, or (2) by prescriptive right of easement under the qualified fee granted by John N. Lyon and Samuel Augustus Lyon. (*Gillespie* v. *Broas*, 23 Barb. 370; Gould on Waters [3d ed.], §§ 333, 334, 340; *Smith* v. *City of Rochester*, 92 N. Y. 463.) The easement in favor of Wilcox to use the bed of the pond was a simple right to use such bed as a means of support for the additional twelve feet of water superimposed thereon by reason of flooding the lands so granted. (Lewis on Em. Dom. § 441; *Village of Olean* v. *Steyner*, 135 N. Y. 341.) The rights of the city under the Wilcox deeds to maintain the waters of Byram pond twelve feet above their original level did not deprive the owners of the bed of the pond of their right to compensation for the taking of such bed. (*City of Syracuse* v. *Stacey*, 169 N. Y. 231.) De Witt C. Sarles was entitled to have his interest in the bed of Byram pond valued upon a consideration of all the uses for which such pond was adapted and available; that is, all the uses to which it might be put by any one. The uses which he or his grantors had been, or at any time thereafter might be, capable of making of the property was a wholly unimportant consideration. (*Boom Co.* v. *Patterson*, 98 U. S. 403; *G. F. Mfg. Co.* v. *U. S.*, 16 U. S. Ct. Claims, 160; 112 U. S. 645; *Matter of N. Y., L. & W. Ry. Co.*, 27 Hun, 116; *College Point* v. *Dennett*, 5 T. & C. 217; 2 Hun, 669; *Matter of Gilroy*, 85 Hun, 424; *Little Rock Junction* v. *Woodruff*, 49 Ark. 381; *Hyde Park* v. *W. T. Co.*, 117 Ill. 233; *S. D. L. & T. Co.* v. *Nagle*, 70 Cal. 33; *S. P. Water Works* v. *Drinkhouse*, 92 Cal. 548; *Snauffer* v. *Ry. Co.*, 105 Iowa, 681.)

*George L. Rives, Corporation Counsel* (*Theodore Connoly* and *Henry T. Dykman* of counsel), for respondent. The only estate which was left in John N. Lyon and Samuel A.

Lyon, their heirs and assigns, was the possibility of repurchase or reverter. This cannot be assigned, particularly in view of the fact that no nonuser is alleged and the purpose of the original deed is being literally pursued. (*Craigg* v. *Wells*, 11 N. Y. 315; *Lyon* v. *Hersey*, 103 N. Y. 264; Gould on Waters [3d ed.] 588.) The conveyances to Wilcox through which the city derives its rights vested in the grantee an absolute fee subject to a condition, not a limitation, that the lands conveyed should be used for the purpose of raising the waters of Byram pond. (*Lyon* v. *Hersey*, 103 N. Y. 264; *Upington* v. *Corrigan*, 151 N. Y. 143; *Underhill* v. *S. & W. R. R. Co.*, 20 Barb. 455; *Fonda* v. *Sage*, 46 Barb. 109; *Towle* v. *Remsen*, 70 N. Y. 312; *Nichol* v. *N. Y. & E. R. R. Co.*, 12 N. Y. 121.) The city of New York was the owner of the fee of the old bed of the lake. (*Smith* v. *City of Rochester*, 92 N. Y. 463; *Gouverneur* v. *Nat. I. Co.*, 134 N. Y. 355; *Deuterman* v. *Gainsborg*, 9 App. Div. 151; *Hazelton* v. *Webster*, 20 App. Div. 177; 161 N. Y. 628.) Even if there remained some right of ownership in the grantors to Wilcox and his associates a nominal award for the old bed of the pond is justified. (*Sweet* v. *City of Syracuse*, 129 N. Y. 316.)

HAIGHT, J. This proceeding was instituted by the commissioner of public works of the city of New York on behalf of the city, under the provisions of chapter 189 of the Laws of 1893, to acquire title to Byram pond, a non-navigable body of water in the town of North Castle, Westchester county, and to the lands surrounding the same. The commissioners of appraisal, appointed in the proceeding, made their report, in which they awarded to the claimant Sarles substantial damages for his lands surrounding the pond, but only awarded him one dollar nominal damages for the bed of the pond. Objection was filed by him to so much of the report as awarded him only nominal damages for the bed of the pond. The Special Term sustained the objection and ordered a new appraisal as to the lands embraced within the pond, and, in

other respects, confirmed the report.    The Appellate Division reversed so much of the order of the Special Term as granted a new appraisal, and confirmed in full the original report of the commissioners.

In the year 1864 one Josiah Wilcox was the owner of a mill on Byram river, through which flowed the waters from Byram pond, and John N. Lyon was the owner of the pond, or of a portion thereof, and of the lands surrounding the same. Under date of June 28th, 1864, John N. Lyon executed and delivered to Josiah Wilcox a deed, which was recorded in the office of the register, Westchester county, in liber 441 of Deeds, page 298, in which the premises conveyed are described as follows: " All that certain piece or parcel of land situate lying and being in the Town of North Castle, County of Westchester and State of New York bounded and described as follows, viz.: Southerly by lands of Ebenezer G. Platt, westerly by land of the party of the first part, northerly by lands of Samuel Augustus Lyon and easterly by land of the party of the first part being all the land on both sides of the Byram River and Byram Pond that will be overflowed by the waters of Byram River and Byram Pond in consequence of the erection of a dam across said Byram River, southerly of lands hereby conveyed of sufficient height to raise the waters in Byram Pond eight feet and two tenths above its present level, and the above described land is conveyed by the party of the first part to the party of the second part only for the purpose of being flowed by said pond, and in case the party of the second part should not use said land for the purpose above named then the party of the first part his heirs and assigns shall buy back the land hereby conveyed at such price as may be agreed upon between the parties to these presents and in case of a disagreement between the parties, then each shall choose a disinterested · person as umpire and the two shall choose a third person and the three persons thus selected shall fix a price on the land which shall be binding between the respective parties to these presents, their heirs and assigns. ' Together with all and singular, the tenements, hereditaments

and appurtenances thereunto belonging, or in anywise apper-
taining, and the reversion and reversions, remainder and
remainders, rents, issues and profits thereof," and so on, fol-
lowing the usual form of the ordinary printed deed, and con-
cludes with a covenant to the effect that the party of the
second part may within two years from that date purchase an
additional quantity of land surrounding the pond sufficient to
raise the dam three feet higher upon paying one hundred dol-
lars per acre therefor. Wilcox apparently availed himself of
the provisions of this covenant, for a second deed, bearing
date the 12th day of October, 1864, recorded in liber 549 of
Deeds, page 351, was executed by Lyon to Wilcox, which con-
veys all the land that will be overflowed, being about two
acres, by the waters of Byram river and Byram pond, by the
erection of a dam of sufficient height to raise the water in
Byram pond twelve feet above the present level of the pond.
This deed contains substantially the same description and pro-
visions contained in the former deed, with the exception that
it gives the right to raise the water of the pond twelve feet
instead of eight feet. The city of New York has acquired
the rights of Wilcox in the premises, and the claimant, De
Witt C. Sarles, has succeeded to the title of John N. Lyon.

It becomes important, in the first place, to determine who
is the owner of the pond. If the city of New York is the
owner, then these proceedings were unnecessary, and the
nominal award of one dollar should not have been made.
Both parties claim under John N. Lyon, and it, therefore,
becomes important to determine the construction that should
be given to his two deeds to Wilcox. In describing the land
conveyed, it is stated in the deeds as "being all the land on
both sides of Byram River and Byram Pond." It may be
conceded that where a tract of land is conveyed by deed,
described by metes and bounds, that the title to any lake or
pond included within the boundary lines passes with the
uplands to the purchaser. It may also be conceded that the
conveyance of land along a highway, stream or pond in which
the description runs to the highway, stream or pond, the title

to the center of such highway, stream or pond will ordinarily
be held to have passed under the grant. But when the
boundary line is along the side, the edge, the border or the
margin of a highway, stream or pond, the parties will be held
to have intended to limit the lands conveyed to that within
such boundary, and not to that which constitutes the bed of
such highway, stream or pond. As, for instance, "along a
stream" means along the center or thread of the stream, while
"along the shore of the stream" means along the edge or
margin of the stream. In the case under consideration the
deed conveys the land on the sides of the pond, and not that
of the pond itself. It is the land bordering upon the waters
of the pond which may be overflowed by the raising of the
dam, and not the lands under the waters of the pond already
overflowed. It appears to us that the fair and reasonable
construction of the language used in the deed would exclude
from the conveyance all the lands within the pond, leaving
the title thereto in the grantor. (*Child* v. *Starr*, 4 Hill, 369;
*Starr* v. *Child*, 5 Den. 599; *Halsey* v. *McCormick*, 13 N. Y.
296; *Holloway* v. *Southmayd*, 139 N. Y. 390–413.)

It is now contended that even though the bed of the pond
was not included in the conveyance to Wilcox, the con-
veyance did vest in Wilcox, in fee, a strip of land surround-
ing the pond, by which Lyon cut off his right of access to
and possession of the pond. This brings us to a more minute
consideration of the deeds. The formal parts of the deeds
are those in ordinary use, containing apt words for the con-
veyance of the fee to the lands described. They include all
the hereditaments and appurtenances thereto belonging, as
well as the rents, issues and profits. But when we find pro-
visions in a deed which are inconsistent, the rule is well
settled that those provisions which are written or are unusual,
or those which have received special attention, will be deemed
to express the intention of the parties rather than the printed
or formal portions of the instrument.

John N. Lyon owned a farm of two hundred acres which
he had purchased from Samuel A. Lyon two years before.

10

In his deed to Wilcox he commences by describing his whole farm, giving the boundaries, and then he limits the amount intended to be conveyed, with the clause, " being all the land on both sides of Byram River and Byram Pond that will be overflowed by the waters of Byram River and Byram Pond in consequence of the erection of a dam across said Byram River, southerly of lands hereby conveyed of sufficient height to raise the waters in Byram Pond eight feet and two tenths above its present level, and the above described land is conveyed by the party of the first part to the party of the second part *only* for the purpose of being flowed by said pond." It is thus apparent that but for the provision above quoted, the title of Lyon's whole farm passed to and vested in Wilcox. But the provision limiting the grant to the lands on both sides of the pond overflowed by water, is inconsisent with the provision describing the whole farm as conveyed. So also is the provision that the lands are conveyed " *only* for the purpose of being flowed by said pond " inconsistent with the other provisions of the deed, which would ordinarily be construed as passing a fee to the land. These clauses are the prominent and noticeable provisions of the deed. They are its essential features, the real essence of the contract, and evidently they are the result of the deliberate thought and agreement of the parties and express their intention. We, therefore, think they should be given force and effect in preference to the usual formal provisions appearing in the deed.

The fee is the greatest interest that can be granted in real estate. It includes title, the right of possession and the right to use for any purpose which may be lawful. The limiting of the use and purpose of the land conveyed to that *only* of being flowed by the waters of the pond prohibits the purchaser from making any other use of it. It does not even give him the right of possession. He may erect the dam of the height specified and he may have the waters collected overflow the land, but this is the extent of his rights. This does not constitute a fee. At most it is but a mere easement, leaving the title, possession and use to the grantor, subject only to the

right of flowage created by the deed. The circumstances of this case are not unlike those which may be found on nearly every stream or river throughout the country in which there flows sufficient water to turn a wheel. Mills and mill dams are very numerous, and many grants for the right of flowage have been made by upper riparian owners, and yet not a case has been called to our attention in which it was ever held or claimed that such a grant carried the fee. Our construction of the provision of these deeds is not only sustained by, but is strengthened by the circumstances surrounding the parties at the time they were executed. Wilcox was a millowner upon Byram river, below the pond. He was seeking additional power with which to operate his mill. He first procured the right, by the first deed, to erect a dam eight and two-tenths feet high; then about three months thereafter, probably before he had completed the construction of the dam, he procured the further right, by the second deed, to erect the dam twelve feet high. There was no reason why he should go to the expense of acquiring the title to the bed of the pond, or of the fee of the land surrounding it. His purpose was fully satisfied by acquiring the right to construct the dam of that height and have the waters collected flow back upon the lands of his grantor. In the case of *Stevens* v. *Kelley* (78 Maine, 445) it was held that the owner of a mill dam on an unnavigable stream, who does not own the bed of the stream above the dam, has only a qualified interest in the flow of the water, and the upper riparian owner has the right to possession, use and occupation, subject to the easement of the millowner's right of flow, and that the riparian owner is the owner of the ice which forms upon the pond and has the exclusive right to harvest the same.

It is contended that the provisions in the deeds to the effect that in case Wilcox should not use the lands for the purposes mentioned, Lyon, or his heirs and assigns, "shall buy back the lands hereby conveyed," creates a condition subsequent, in which a fee may vest. Of course a condition subsequent embraced in the deed does not prevent a vesting of the fee,

but this is upon the assumption that a fee was intended to be conveyed. If no fee was intended there could be none to vest. But is it a condition subsequent? There is no forfeiture provided for or any re-entry authorized upon the happening of such event. It is merely a mutual agreement of the parties, of Wilcox to sell and of Lyon, or his heirs and assigns, to buy back that which had been conveyed to Wilcox, upon a price to be agreed upon or settled by arbitration. Wilcox had the right to demand that Lyon should take the same, as well as Lyon had the right to insist upon his right to purchase. The covenants were mutual and could be enforced by either. But whether it may be a condition subsequent or not, it does not appear to us to affect the main question considered as to the interest that the parties intended to convey by the deeds in question.

Upon the argument of this appeal there was an elaborate discussion as to the rule of damages that should be adopted. We do not deem it necessary at this time to enter upon a discussion of that question. The conclusion which we have reached is that the deeds to Wilcox did not convey to him the fee to the lands above the dam, but that it did convey the right to maintain the dam and to flow the waters collected therein upon the land that would be covered thereby; that, subject to this right, Lyon remained the owner of the fee, to not only the bed of the pond but to the lands covered by the flowage, with the right to the possession and use in connection with his upland, which were not inconsistent with the right of Wilcox to the use of the water as the exigencies of his business might require, and that among the uses retained by Lyon was that of supplying himself and family with water for domestic purposes, the harvesting of ice, etc. The city of New York, as we have seen, has acquired Wilcox's right to maintain the dam and to use the waters collected and stored therein. For this Lyon has already received a compensation in the consideration given for the deeds. Sarles is not, therefore, entitled to recover damages therefor. But he had the right to use the pond in connection with his upland for the

purposes stated, together with the right to repurchase the interest conveyed, as provided for in the deeds; and these rights are real, entitling him to substantial damages upon their being taken from him, pursuant to the provisions of the act under which these proceedings were instituted.

We, therefore, conclude that the order of the Appellate Division should be reversed, that of the Special Term affirmed, and that the costs in this court and in the Appellate Division should be awarded to the appellant; the other costs in the proceeding to abide the final award of costs.

BARTLETT, J. (dissenting). The deeds to Wilcox, in my opinion, conveyed the absolute fee of the premises described subject to a condition subsequent.

No particular form of words is necessary to create a condition subsequent, but the cases hold it must be clearly expressed. (*Lyon* v. *Hersey,* 103 N. Y. 264; *Upington* v. *Corrigan,* 151 N. Y. 143.)

The premises in question were to be used for flowage purposes, and the deeds provide if not so used then the grantor, his heirs and assigns, " shall buy back the land hereby conveyed at such price as may be agreed upon between the parties to these presents." A clause then follows for umpires to fix price if parties fail to agree.

It is a little difficult to comprehend how grantors can "buy back" land unless title passed under their conveyance.

I vote for affirmance.

PARKER, Ch. J., O'BRIEN and WERNER, JJ., concur with HAIGHT, J.; GRAY and CULLEN, JJ., concur with BARTLETT, J.

Order reversed, etc.