EWING et al. v. TRAWICK.

No. 35620.    April 14, 1953.

*256 P. 2d 182.*

Arney & Barker, Clinton, for plaintiffs in error.

Donald T. Royse, Elk City, and Meacham, Meacham, Meacham & Meacham, Clinton, for defendant in error.

PER CURIAM. The plaintiffs in error were defendants below, and defendant in error was plaintiff below. They will hereinafter be referred to as they appeared in the trial court.

The plaintiff brought suit on September 6, 1951, to quiet title, alleging that he was the owner in fee simple of a tract of land in Custer county, Oklahoma, from which had been reserved to the defendant Ewing 1/8th royalty

on oil, gas, coal or minerals. That the defendants J. P. Bills and D. N. Bills were claiming some right, title, lien or interest in or to said real estate, but in fact had none; that plaintiff and his grantors had been in open, visible, continuous and exclusive possession of said real property for more than fifteen years under claim of ownership and title and that the same was held by plaintiff, not under the permission of anyone, but adversely. Plaintiff prayed for judgment quieting title to all of said real estate, except an undivided 1/8th interest in the oil, gas, coal and other minerals in and under said real estate, and asked that the title thereto be quieted in R. L. Ewing and Ada Ewing.

Defendants in their answer alleged that D. N. Bills died intestate and left as his sole and only heirs at law his widow and adult children, and that the heirs of said D. N. Bills had not been determined; that said defendants said it was the intention of the said J. P. Bills and D. N. Bills, to reserve a 1/8th of said minerals and that the scrivener, by inadvertence, referred to the same as 1/8th royalty. Defendants denied all of the material allegations of plaintiff's petition, except they admitted that plaintiff acquired title to the property by warranty deed from the Dallas Joint Stock Land Bank of Dallas, Texas. Defendants prayed that the heirs of D. N. Bills be determined under the laws of Oklahoma and that title to said 1/8th undivided interest in and to the minerals in and under the premises described be quieted and confirmed in them and that their warranty deed be reformed to reflect that said answering defendants owned 1/8th of the minerals.

Plaintiff in his reply denies the allegations of the answer and alleged that if the deed of conveyance from said Bills was executed as alleged, said defendants would have no rights in said land for the reason that the conveyance from Bills was a warranty deed in which title to the surface and an undivided 7/8ths interest in the minerals

was warranted by the predecessors in title to the grantors Bills, and the said Bills' warranty deed conveyed all the surface and 7/8ths interest in the minerals; that it was the intention of the parties to except a 1/8th interest only in said minerals, which had been reserved by the said Ewings.

Upon order of the court, the defendant Max Ewing was made party defendant and R. L. Ewing and Ada Ewing filed disclaimers, stating they had conveyed said land to their son, Max H. Ewing.

The defendant Max Ewing filed an answer and cross-petition alleging that he owned 1/8th interest in all minerals in said land and asked the court to quiet his title thereto.

Jury was waived and the parties stipulated that the affidavit of J. P. Bills might be admitted in evidence and considered as testimony of that affiant. After trial to the court, judgment was rendered for plaintiff, quieting his title to said land, except an undivided 1/8th interest in the minerals, which was quieted in Max Ewing. Only the defendants J. P. Bills and the heirs of D. N. Bills are appealing.

Defendants presented two propositions in their brief: First, error of the court in refusing to sustain a demurrer to the petition, and to the evidence of plaintiff; and, second, that the court admitted and considered incompetent, irrelevant and prejudicial testimony in arriving at its decision.

Plaintiff testified that he had lived on this land since 1938 and purchased it from the Dallas Joint Stock Land Bank of Dallas, Texas. The land involved is described as S.½ of N.E.¼ and S.½ of N.W.¼ and N.W.¼ of S.W.¼ and N.E.¼ of S.E.¼ of section 28, township 13 north, range 30 west, Custer County, Oklahoma.

The warranty deed was introduced in evidence and is dated December 27, 1938, and recorded January 13, 1939, whereby the Dallas Joint Stock Land Bank of Dallas conveyed the above-

described property, with other land, to H. L. Trawick, less certain royalties for a period of ten years from date, or so much longer as oil and gas may be produced from said land; that no oil or gas had been produced from said land nor any well drilled thereon; that he had been in the actual open, peaceable possession since he bought the land, farming it, and no one else had asserted any claim thereto until this lawsuit was filed, and that prior to the time he bought it, the Dallas Joint Stock Land Bank of Dallas was in possession since 1935. Plaintiff introduced sheriff's deed to the Dallas Joint Stock Land Bank of Dallas, dated January 9, 1935, and recorded January 16, 1935, conveying all the interest May Belle Gholson and S. R. Gholson had on February 15, 1927, in the land in controversy and other lands; that plaintiff never heard of the Bills until the oil play came up and he thought he had all the minerals until the Mid-Continent attorney called it to his attention in June, 1951. Plaintiff then offered in evidence the following deeds, which were objected to, admitted and exception saved:

Exhibit 1: Warranty Deed from R. L. Ewing and Ada Ewing to B. C. Hudson and Girtha Hudson, his wife, dated October 28, 1916, which contained the following clause: "Parties of the first part reserves one eighth Royalty on Oil, Gas, Coal or minerals their heirs or assigns."

Exhibit 2: Warranty Deed from B. C. Hudson and Girtha Hudson, husband and wife, to J. P. Bills and D. N. Bills, dated September 1, 1917, which contained the following clause: "Parties of the first part reserves one eighth royalty on oil, gas, coal or minerals, their heirs or assigns."

Exhibit 3: Warranty Deed from J. P. Bills, a single man, and D. N. Bills and Mattie Bills, husband and wife, to E. D. Barnes and James W. Young, dated December 15, 1919, which contained the following clause: "Parties of the first part reserve one eighth royalty on oil, gas, coal or minerals, their heirs or assigns." This follows

the description of the land. At the end of the warranty, this further clause appears: "And the said J. P. Bills and D. N. Bills and Mattie Bills hereby relinquish all their right title and interest in and to the above described premises."

Exhibit 4: Warranty Deed from E. D. Barnes and Beulah Barnes, husband and wife, and James W. Young and Lula Young, husband and wife, to C. H. Cantrell, dated September 21, 1920. Just preceding the Warranty is this clause: "Parties of the first part reserve one-eighth (1/8) royalty on oil, gas, coal or minerals."

Exhibit 5: Warranty Deed from C. H. Cantrell and Dona Lee Cantrell, husband and wife, to W. L. Hutcheson, dated August 8, 1922, with no reservation or exception of minerals.

Exhibit 6: Warranty Deed from W. L. Hutcheson and Mary Blanche Hutcheson, wife, to May Belle Gholson, dated May 20, 1925. Following the description appears the following clause: "The party of the first part reserves one eighth royalty on all gas, oil or other minerals on land described in section 28."

Plaintiff's witness W. A. Lewter, who had been in the banking business in Hammon for 40 years, testified that he knew the plaintiff and the land he purchased from the Dallas Joint Stock Land Bank of Dallas, J. P. Bills and D. N. Bills; that plaintiff and J. P. Bills had been customers of the bank; that he drew the deed from Bills to Barnes and Young and took the acknowledgment of J. P. Bills; that he remembered putting the reservation clause in the deed, because it was in the former deed, to protect Bills against some royalty already disposed of and that he copied the reservation from another deed, and that in order to protect the Bills' interest as best he could he added the clause, "and the said J. P. Bills, D. N. Bills and Mattie Bills hereby relinquish all their right, title and interest in and to the above described premises;" that said clause was put in there because

it was agreed between the parties, and that that should be in there; that he is not a lawyer. On cross-examination, he testified he remembered this deed because of this royalty question and denied he told Mrs. Allison that he did not remember it, and that he remembered about that deed and that exception; that J. P. Bills did not want to reserve 1/8th for himself; that he remembered because the only deal was the royalty owned and he was trying to write it against what was already gone and that at no time in the deal did he know about additional royalty until Mrs. Allison called him; that it was discussed that a portion had already been conveyed and Mr. Barnes knew that at the time.

Under the stipulation, the affidavit of J. P. Bills was admitted as what he would testify to if present. It stated that on December 15, 1919, either Ed Barnes or James W. Young, or both of them, approached J. P. Bills and D. N. Bills to buy this land; that the deal was finally made; that Barnes or Young took D. N. Bills and J. P. Bills to Hammon, and asked Lewter to do the work; that Lewter was doing the work for Barnes and Young; that at that time the two Bills and the purchasers discussed the fact that there was 1/4th of the minerals already gone, and that the two Bills wanted to reserve another 1/8th, and that all of the parties orally agreed to it before Lewter.

Next appears the affidavit of Aubrey Bills, stating that D. N. Bills is deceased, died intestate more than four years prior to April 2, 1952; that no court had determined the particular persons entitled to participate in the distribution of his estate; that at the time of his death he owned 1/16th undivided interest in the minerals under said land and left as his sole and only heirs at law his wife and certain others.

Defendants' witness, Iona Allison, testified that she is the daughter of J. P. Bills, who lives in California; that after the oil deal came out, she called Mr. Lewter and asked if he remembered the deed and he said "No," and two weeks later she went to the bank and asked if he remembered drawing the papers in which her dad reserved 1/8th, and that he said he didn't know, he just fixed the papers "like your dad wanted me to." When she heard Trawick had leased the land, she asked about her dad's interest and he said it was too late, that it was already published in the papers. She said she did not know the suit was filed until after he published it in the paper. That concluded the evidence.

If we are to adopt the defendants' construction of their deed, then giving the same force to the other deeds, there would be 5/8ths of all the minerals reserved to various grantors. Other than defendants, no grantor has claimed interest in the minerals, except the original reservation of 1/8th to the Ewings. The reservation or exception in each deed is practically identical. In addition, the Bills when conveying the land added the final clause which is significant of their intention at that time, stating: "And the said J. P. Bills, D. N. Bills and Mattie Bills hereby relinquishes all their right, title and interest in and to the above described premises." The evidence of the parties was conflicting.

In an action of purely equitable cognizance, it is for the trial court to determine the credibility of the witnesses, and the weight and value to be given their testimony. McAfee v. Harden, 180 Okla. 546, 71 P. 2d 463.

A cardinal rule in construing a deed is ascertaining the true intent of the makers, as that intent may be discerned from the instrument itself, taking it all together, considering every part of it and viewing it in the light of the circumstances surrounding the makers at the time of its execution; and their later acts in connection therewith may be considered in arriving at their intention. Case v. Case, 207 Okla. 681, 252 P. 2d 432.

The terms "reserving" and "excepting" are used interchangeably in deeds, and their technical meaning will give way to the manifest intent, even though the technical term to the contrary is used. Burns v. Bastien, 174 Okla. 40, 50 P. 2d 377.

Giving effect to the above rules of law construing the Bills deed and taking into consideration all of the evidence, we hold that the trial court did not commit prejudicial error on admitting and considering the other deeds hereinabove referred to.

This court has so repeatedly laid down the following rule that it is unnecessary to cite authorities:

"In a case of equitable cognizance the appellate court will examine and weigh the evidence but the judgment of the trial court will not be disturbed on appeal unless it appears that such judgment is clearly against the weight of the evidence."

Having considered the entire record in this case, together with the briefs, we are of the opinion that the judgment of the trial court is not clearly against the weight of the evidence and should not be disturbed on appeal.

Affirmed.

This court acknowledges the services of Attorneys Frank T. McCoy, Wm. S. Hamilton, and John T. Craig, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

JOHNSON, V.C.J., and WELCH, CORN, DAVISON, O'NEAL, WILLIAMS, and BLACKBIRD, JJ., concur.