H. W. McVEY, Franex Oil Corporation, a Corporation, and Maurice Sanditen, R. L. Miller and Ludie Miller, his wife, Plaintiffs in Error,

v.

Mary O. HINES, formerly Mary O. Rainbolt, Defendant in Error.

No. 40179.

Supreme Court of Oklahoma.

Sept. 17, 1963.

W. F. Semple, Tulsa, for plaintiffs in error.

Bailey & Jones, Cordell, for defendant in error.

BLACKBIRD, Chief Justice.

By this action instituted in March, 1961, defendant in error, hereinafter referred to as plaintiff, sought, in effect, and mainly, to establish her right to lease, for oil and gas purposes, with accompanying right to all bonuses and delay rentals, payable by reason of such leasing, of a conglomerate

$48/192$nds interest in the minerals lying in and under two separate tracts of land—one in Section 11, and the other in Section 12—Township 9 North—Range 18 West of the Indian Meridian, situated in Washita County. The tracts are referred to in consecutive section order as Tracts No. "1" and "2", respectively.

Plaintiffs in error, named, and hereinafter referred to, as "defendants" in the action, deraign their title through L. D. and E. D. Hines, to each of whom, plaintiff by separate base deeds executed in October, 1949, conveyed an undivided ¼th interest in the minerals under the above tracts. The crucial issue in the case was whether or not these undivided one-fourth interests were so-called "participating" or "non-participating" interests. A proper decision as to this issue depends upon the efficacy of language typewritten into the blank space left in the granting part of the regular Mid-Continent Royalty Owners Association printed form of mineral deed, for the legal description of the property, and reading as follows:

"Except the grantor reserves and retains unto herself the right to receive and collect*e* any and all moneys to be paid for any delay-right or annual rentals under any oil and gas lease now existing or hereafter to exist And all lease Bonus."

On one of the deeds there appears to be a comma, and on the other, a period, between the words "exist" and "and", in the last above-quoted line.

It was made to appear by the written stipulation of facts filed in the case that all of the mineral interests involved were covered by a 10-year oil and gas lease on the date the above described base mineral deeds were executed and delivered. It further appears that certain mesne mineral conveyances, through which defendants deraign their title, and which were thereafter executed and delivered by E. D. and L. D. Hines, and certain of their successors in title, during the years 1949 and 1950, all contained recitals that they were "subject

to the terms and conditions * * *" of the two above-described base deeds.

It further appears that in July, 1955, there was filed of record in the County Clerk's office two so-called corrective instruments, executed that same month by L. D. Hines and his wife, and by E. D. Hines as a single man, reciting that said signatories were thereby assigning to plaintiff—designating her by her name at that time—and her heirs, executors, assigns, etc., " * * * the full right, power and authority to make, execute and deliver all future oil and gas mining leases upon * * *" the same legally described land as is involved herein. The instrument further recited that its purpose was the correction of the deeds hereinbefore referred to as "base deeds", identifying them by the book and page number of their recording, " * * * which it was intended by the parties that the right, power and authority to lease such minerals and mineral rights should be reserved to the grantor * * * (therein) * * *, which reservation was, by inadvertence, omitted by the scriviner."

Upon consideration of the issues tendered by the pleadings and stipulated facts, the trial court rendered judgment for plaintiff, after making the following specific finding concerning the hereinbefore mentioned two base deeds of 1949:

"That from said instruments it is evident that when the original Mineral Deeds were executed, it was the intention of the parties that such mineral interest conveyed, was a non-participating mineral interest, and the defendants and each of them in receiving title and in conveying partial interest, knew that such interest was a non-participating interest * * *."

From said judgment, defendants have perfected the present appeal on original record, contending that, for certain reasons, the trial court erred in resolving in plaintiff's favor, the conflict between the hereinbefore quoted typing in the base deeds' granting portion, and a subsequent printed paragraph in the deed forms which reads as follows:

"This sale is made subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease of record heretofore executed, it being understood and agreed that said Grantee shall have, receive and enjoy the herein granted undivided interests in and all bonuses, rents, royalties and other benefits which may accrue under the terms of said lease insofar as it covers the above described land from and after the date hereof, precisely as if the grantee herein had been at the date of the making of said lease the owner of a similar undivided interest in and to the land described and Grantee one of the lessors therein.

* * * * * *."

In the argument under their first proposition for reversal, defendants appear to be of the opinion that the above quoted printed paragraph of the deeds contains words precisely showing that, by their terms, they were conveyances to the grantees therein of the whole mineral estate, and that the hereinbefore quoted typewritten provision is so lacking in proper language to effect a reservation to plaintiff—the grantor therein—of any part of such an estate, that the printed portion should be given controlling effect. By a quotation from Herndon v. Shawnee National Bank, 105 Okl. 207, 232 P. 432, as to the statutory presumption accompanying estates conveyed by deed, defendants infer that such presumption should be considered in aid of their interpretation of the deed. We do not think said presumption is applicable here, especially since the typed provision, characterized by plaintiff as a limitation on the estate granted, appears in the granting clause, or portion, of the deed.

██ We are of the opinion that the controlling rule here is that where the written portion of a deed is inconsistent with the printed portion, the writing will prevail over the printing. See Annotations

beginning at 37 A.L.R.2d 820, citing Shephard v. Horton, 188 N.C. 787, 125 S.E. 539, and other cases of like effect; also 16 Am.Jur., "Deeds", section 178, and 26 C.J.S. Deeds § 85. This rule is a part of our statutory law pertaining to contracts. See Title 15 O.S.1961, § 167, and Hurst v. Byars, Okl., 298 P.2d 407. As will be seen from the cited Annotation, it was said in Onofrey v. Wolliver, 351 Pa. 18, 40 A.2d 35, 155 A.L.R. 1074, that the written provisions are presumed to be a deliberate expression of the real intent of the parties. See also Hickey v. Dirks, 156 Kan. 326, 133 P.2d 107. Being specially inserted, the writing is usually the result of deliberate thought, special intention and agreement of the parties, and should be given force and effect in preference to the usual formal provisions. See In re Brookfield, 176 N.Y. 138, 68 N.E. 138. Typing is usually considered "writing" within the meaning of the rule. In this connection notice New Masonic Temple Association v. Globe Indemnity Co., 134 Neb. 731, 279 N.W. 475, and other cases discussed in the cited annotation. In Thompson v. Thompson, 330 Mich. 1, 46 N.W.2d 437, 441, it was said:

> " * * * In cases of inconsistency between the printed provisions of a form and the language inserted by the parties, the latter is held to prevail because it is the immediate language of the parties, selected by them, and it therefore, more safely and clearly indicated their intention. (Citing cases). * * * "

Giving controlling importance, as urged by the defendants, to the printed portion of the deeds, would reduce the typed provision to mere surplusage and render null, and a vain and idle gesture, the portion of the deeds that the parties themselves deliberately caused to be inserted therein. (In this connection, notice what we said in First National Bank & Trust Co. of Tulsa v. Price, 204 Okl. 243, 228 P.2d 623, 625). To ignore it would be to close our eyes to the purpose of the modern practice of using blank spaces in deed forms to effect departures from their printed portions. In this connection see Trenton Potteries Co. v. Blackwell, 137 N.J.Eq. 113, 43 A.2d 831, 833. The ignorance, carelessness, or inadvertent failure of unskilled scriveners to erase or obliterate printed portions, which one trained in the law would perceive as being inconsistent or repugnant to typed-in provisions, is not a satisfactory reason for refusing effect to the intention of the parties as they have expressed it in informal, or unlegalistic, typewritten terms. Furthermore, if the meaning of the language is clear, the parties' intention should not be thwarted just because it is not expressed in the most grammatical, technically correct, or adept language. In this connection, notice Ewing v. Trawick, 208 Okl. 311, 256 P.2d 182; Paschall v. Royalties, Inc., 198 Okl. 646, 181 P.2d 558; 26 C.J.S. Deeds § 137; and 16 Am.Jur., "Deeds", sec. 237. We think it clear from the words typed into the base deeds in this case that one of the purposes of said instruments was to reserve in the grantor therein named, all executive rights pertaining to the leasing of the mineral estate thereby conveyed. As to what may be contemplated in the term "executive rights" when used in connection with oil and gas leasing, notice the recent case of Stroud v. D-X Sunray Oil Co., Okl., 376 P.2d 1015.

There is no merit in defendants' claim, in connection with their "Proposition No. II", that the wording used was inappropriate for this purpose, and that, in view of its punctuation, and/or sentence structure, the typed provision may be as reasonably interpreted as a conveyance of bonus rights to the grantees in said deeds, as a reservation of such rights in the grantor. If plaintiff had intended to convey to her grantees in said deeds, the rights to lease the mineral estate therein described, and for them to receive the bonus and delay rentals in connection therewith, no special provision need to have been typed into the instrument. In view of this, and of the effect that the typewritten provision has in countermanding any printed portions of

the deeds in conflict therewith, under the rule already recognized, and, in view of the explanation contained in the corrective instruments hereinbefore described, there is no ambiguity in the deeds sufficient to render it doubtful that they were intended to reserve to the plaintiff the executive rights in connection with leasing the interests thereby conveyed. With the conflicting printed portion of the deeds thus removed from consideration, we see nothing in the wording of the typewritten provision that can be construed to defendants' advantage, assuming, without deciding, that it should be construed most strongly against the grantor therein. If the typewritten provision is construed as countermanding the conflicting printed portion of the deeds, the comparative clarity of said printed portion is no longer a factor to be considered.

We have considered all of the arguments of the defendants and find in them no valid reason for reversing the trial court's judgment for plaintiff. Said judgment is therefore affirmed.