2000 OK 31

K & K FOOD SERVICES, INC. d/b/a Burger King Restaurant at 721 S. Meridian Avenue in Oklahoma City, OK, Appellant,

v.

S & H, INC. d/b/a Hilton Garden Inn at 801 S. Meridian Avenue in Oklahoma City, OK, Appellee.

No. 93,595.

Supreme Court of Oklahoma.

April 18, 2000.

Robert E. Norman Oklahoma City, Oklahoma, For Appellants.

Chris Harper, Phillip Owens, Oklahoma City, Oklahoma For Appellee.

¶ 1 KAUGER, J.:

¶ 2 The issue presented is whether the trial court prematurely entered summary judgment when it determined that a hotel could construct a curb along the common property line it shared with a restaurant notwithstanding an indenture which provided for unobstructed passage of persons and ve-

hicles over and across common property lines. We hold that material fact questions exist concerning: 1) whether the makers of the indenture intended to keep the entire length of the property lines unobstructed or whether it was intended that only a portion need be unobstructed to allow access; and 2) whether the construction of the curb violates the terms of the indenture.

## FACTS

¶ 3 The appellant, Weschad, Inc. d/b/a Burger King (restaurant) is the owner and operator of a Burger King restaurant in Oklahoma City. The appellee, S & H, Inc. d/b/a Hilton (hotel) owns two tracts of land which share property lines along the south and west boundaries of the restaurant's property. On October 2, 1967, the previous owners of both properties entered into an indenture which provided for "the right of continuous, open and unobstructed passage for persons and vehicles over and across the property lines that are common."[1] The indenture was recorded with the County Clerk on October 11, 1967.

¶ 4 In March of 1999, the restaurant discovered that the hotel was building a concrete curb running parallel to the restaurant's south boundary lines, and that the only access allowed was through an opening in the curb at the west end of the property. On April 16, 1999, the restaurant sought a restraining order, a temporary injunction, and a permanent injunction to prohibit the hotel from constructing the curb near the property line between the two properties. The restaurant alleged that: the hotel's construction of the curb violated the terms of the indenture; the restaurant, the hotel and their predecessors used the entire length of the common property line for more than 15 years as a drive to access one another's property; and the use of the property line as a drive resulted in an easement by prescription for ingress and egress to and from both properties.

---

1. The indenture provides in pertinent part:
   " ... both parties do, by these presents, grant, bargain, sell and convey unto each other, their successors and assigns, the right of continuous, open and unobstructed passage for persons and vehicles over and across the property lines that are common to First and Second Party ...
   ... AND said Parties for themselves, their successors and assigns, do hereby covenant, promise and agree that, at the delivery of these

   presents, they are lawfully seized in their own right of an absolute and indefeasible estate of inheritance, in fee simple, of and in, all and singular the above granted and described premises with the appurtenances, and that they will warrant and forever defend the above right of free passage unto each other their successors and assigns against all and every person or persons whomsoever lawfully claiming to or claim the same ... "

¶5 On April 27, 1999, the hotel filed a combined motion for summary judgment and motion to dismiss. The restaurant filed a combined objection to the hotel's motion to dismiss and a cross-motion for summary judgment on May 18, 1999. Finding that the indenture only required passage at some point along the property lines, and that no easement by prescription existed, the trial court, Honorable Carolyn R. Ricks, granted summary judgment to the hotel and against the restaurant. The restaurant appealed, and the Court of Civil Appeals affirmed. We granted certiorari on February 22, 2000.

¶6 **MATERIAL FACT QUESTIONS EXIST CONCERNING: 1) WHETHER THE MAKERS OF THE INDENTURE INTENDED TO KEEP THE ENTIRE LENGTH OF THE PROPERTY LINES UNOBSTRUCTED OR WHETHER IT WAS INTENDED THAT ONLY A PORTION NEED BE UNOBSTRUCTED TO ALLOW ACCESS; AND 2) WHETHER CONSTRUCTION OF THE CURB VIOLATES THE TERMS OF THE INDENTURE.**

■■■■ ¶7 Generally, an indenture is a deed or writing containing a conveyance, bargain, contract, covenant or agreement between two or more parties,[2] and in construing an indenture the usual rules for the interpretation of contractual writings apply.[3] If the terms of a contract are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated.[4] Regardless of how broad the terms of a contract may be, its terms extend only to those things concerning which it appears the parties intended to contract.[5] The interpretation of a contract, and whether it is ambiguous is a matter of law for the Court to determine and resolve.[6]

■■■■ ¶8 Unless some technical term is used in a manner meant to convey a specific technical concept, language in a contract is given its plain and ordinary meaning.[7] A contract term is ambiguous only if it can be interpreted as having two different meanings.[8] Uncertainties in a conveyance may be treated as ambiguities. These may be clarified by resort to the intention of the parties as gathered from the instrument itself; the circumstances attending and leading up to its

2. See, *Bowen v. Beck*, 94 N.Y. 86 (1883) [Recognizing an indenture is a writing containing a conveyance, bargain, contract, covenant or agreement between two or more.]; Blacks' Law Dictionary 773 (7th ed. 1999) [Defining an indenture as "[a] formal written instrument made by two or more parties with different interests, traditionally having the edges serrated, or indented, in a zigzag fashion to reduce the possibility of forgery and to distinguish it from a deed poll" or "[a] deed or elaborate contract signed by two or more parties."].

3. See, *Crockett v. McKenzie*, 1994 OK 3, ¶5, 867 P.2d 463; *Messner v. Moorehead*, 1990 OK 17, ¶8, 787 P.2d 1270; and *Public Serv. Co. of Oklahoma v. Home Builders, Etc.*, 1976 OK 120, ¶6, 554 P.2d 1181, in which we applied rules of contractual interpretation to determine the interpretation and intent of conveyances.

4. Title 15 O.S. 1991 § 152; 15 O.S. 1991 § 154; *Osprey L.L.C. v. Kelly-Moore Paint Co.*, 1999 OK 50, ¶13, 984 P.2d 194; *Messner v. Moorehead*, see note 3, supra [If the language and terms of a

conveyance are clear and unambiguous, then the Court's duty is to ascertain the parties' intent from the language used in the conveyance.].

5. 15 O.S. 1991 § 164; *Public Serv. Co. of Oklahoma v. Home Builders, Etc.*, see note 3 at ¶14, supra; *Barnes v. Townley*, 1968 OK 161, ¶15, 448 P.2d 468.

6. *Osprey L.L.C. v. Kelly-Moore Paint Co.*, see note 4, supra; *Prudential Ins. Co. of America v. Glass*, 1998 OK 52, ¶19, 959 P.2d 586; *Crockett v. McKenzie*, see note 3, supra [Determination as to whether conveyance is ambiguous is question of law for court.].

7. Title 15 O.S. 1991 § 160; *Lucas v. Bishop*, 1998 OK 16, ¶11, 956 P.2d 871; *Kerr-McGee Corp. v. Admiral Ins. Co.*, 1995 OK 102, ¶11, 905 P.2d 760.

8. *Osprey L.L.C. v. Kelly-Moore Paint Co.*, see note 4, supra; *Littlefield v. State Farm Fire & Casualty Co.*, 1993 OK 102, ¶7, 857 P.2d 65.

execution; and the subject matter and situation of the parties as of that time.[9]

¶ 9 The contested portion of the indenture provides in pertinent part:

"... both parties do, by these presents, grant, bargain, sell and convey unto each other, their successors and assigns, the right of continuous, open and unobstructed passage for persons and vehicles over and across the property lines that are common to First and Second Party ..."

¶ 10 On appeal, the restaurant argues that: 1) according to the plain language of the indenture it essentially provides an easement which provides for mutual, unfettered vehicular and pedestrian access over and across the entire length of the common property lines; 2) the hotel's construction of the curb does not allow access across the property lines; and 3) if the grant of a right of access is uncertain or ambiguous in any way concerning its meaning or extent, the practical construction the parties have placed upon the covenant or easement has great, if not controlling weight.[10] Consequently, the restaurant insists that the indenture mandates continuous, open, and unobstructed passage for persons and vehicles over and across the entire length of the common property lines as evidenced by its terms and by the parties' and their predecessors' conduct after its execution.

¶ 11 The hotel counters that: 1) the indenture is not an easement because it does not grant one party or the other the right to use the neighboring property owner's land for any purpose; and 2) the indenture is merely a restrictive covenant which allows a mutual, unobstructed passage across the property lines. It asserts that the indenture speaks for itself and clearly provides that a continuous, open, and unobstructed passage between the properties must be maintained only at some point along the property lines, rather than the entire length of the boundaries.[11]

¶ 12 Apparently, neither the parties, the trial court, nor the Court of Civil Appeals have agreed as to what the indenture conveys. The hotel and the trial court construed it as a restrictive covenant. The restaurant construes it as an easement. The Court of Civil Appeals labeled it a deed without determining precisely what the parties granted or conveyed. Neither party di-

---

9. 15 O.S. 1991 § 163; *Riedt v. Rock Island Improvement Co.*, 1974 OK 30, ¶ 18, 521 P.2d 79; See also, *Lanford v. Cornett* 1966 OK 112, ¶ 9, 415 P.2d 984; and *Davis v. Moore*, 1963 OK 228, ¶ 19, 387 P.2d 483 wherein the Court held that in construing a deed of doubtful meaning intent of the parties must be ascertained from the instrument itself, viewing it in light of its circumstances surrounding makers at the time of its execution; and their later acts in connection therewith may be considered in arriving at their intention.

10. Although neither party disputes that they have always, with permission, allowed the other to use their property to cross over, the restaurant also alternatively asserts that, if the indenture is construed to allow access over and across the property lines only at some point, then an easement by prescription exists allowing access across the entire length of the common property lines. It relies on *Nokes v. Padgett*, 1953 OK 296, 262 P.2d 423 and *Cookson v. Duke*, 1952 OK 169, 243 P.2d 706 in support of its proposition. We find these cases distinguishable on their facts. Both cases involved, in the absence of an express grant, a dispute between adjoining neighbors of private property over the use of a mutual driveway as the only means of access to their garages. Under those circumstances, we found that a presumption was raised that the claim was adverse to the servient land. Here, the purpose of entering into the indenture was to grant express permission

for crossing over the common property lines and it is undisputed that the use began permissive and has always remained permissive. Mere permissive use of way over another's land can never ripen into a prescriptive easement. *Lynn v. Rainey*, 1964 OK 212, ¶ 29, 400 P.2d 805; *Irion v. Nelson*, 1952 OK 331, ¶ 9, 207 Okla. 243, 249 P.2d 107.

11. The hotel, relying on *Jackson v. Williams*, 1985 OK 103, 714 P.2d 1017, insists that restrictive covenants are not favored by the law and will be strictly construed to the end that all ambiguities will be resolved in the favor of the unencumbered use of the property. In *Jackson* we recognized that generally, covenants are not favored by the law and they are strictly construed so that ambiguities are resolved in favor of the unencumbered use of the property. However, we also recognized that ordinarily the intent of the parties controls. The hotel's construction of *Jackson* would require that a court never resolve an ambiguity by considering parol and extrinsic evidence and other circumstances even when the intent of the parties is uncertain. *Jackson* does not stand for such a broad exposition of the law as evidenced by the authority it cites. See *Public Serv. Co. of Oklahoma v. Home Builders Association of Realtors, Inc.*, note 5, supra; and *Pirtle v. Wade*, 1979 OK CIV APP 4, 593 P.2d 1098.

rects our attention to a case in which this Court has previously construed the precise language of the indenture, nor does either party dispute that indentures are used to convey covenants or grant easements.[12]

¶ 13 The indenture appears to restrict the use of both properties by requiring that the common property lines remain accessible. However, the language, taken as a whole, is more like an easement because it appears to create rights rather than mere opportunities to access the other's property. An easement is a liberty, privilege or advantage without profit which the owner of one parcel may have in the lands of another.[13] It is the right to use another's land for some definite and limited purpose.[14] Although typical easement creating language such as "right of way" or "ingress and egress," is noticeably absent, the language of the indenture is synonymous with those terms. Clearly the purpose of the indenture is to keep the property lines open for passage from one property to the other. Apparently, the parties were contracting to keep the property lines unobstructed and granting each other a mutual easement for the perpetual right of access or passage over and across the other's property line.

¶ 14 What is not apparent is whether the terms "unobstructed passage" and "property lines that are common" were intended to mean passage completely free of all obstacles along the entire length of the property lines, or merely that it must continuously remain possible to access the other's property at some point along the property lines. Also absent from the indenture is a description of the length or location of where the common property lines are to remain unobstructed, or the width or area of access on or around the property lines.

¶ 15 Obviously, the indenture is vague, uncertain and ambiguous. The intent of the original parties cannot be determined simply by examining the instrument. The ambiguity must be resolved by the trial court by considering parol and extrinsic evidence and other circumstances, including the parties' admissions and construction as evidenced by subsequent acts and conduct of the parties in connection therewith.[15] Material to the question of intent are facts relating to the circumstances surrounding the indenture's execution, and the intent of the original parties and the construction they placed on the indenture. Whether a use of an appurtenant easement is reasonable is a question of fact.[16] Even if the original parties to the indenture intended to require access only at some point along the property line, the parties dispute whether the hotel's curb obstructs the entire property line or if it does allow reasonable access at some point along the property line. The evidentiary materials presented by the parties are not dispositive of the material questions of fact concerning whether the makers of the indenture intended to keep the entire length of the property lines unobstructed or whether it was intended that only a portion need be unobstructed to allow access and whether the

12. See, *Bowen v. Beck*, note 2, supra; See e.g., *Socony Mobil Oil Co. v. Cottle*, 336 Mass. 192, 143 N.E.2d 265 (1957); *Frye v. Sibbitt*, 145 Neb. 600, 17 N.W.2d 617 (1945); *Deyling v. Flowers*, 10 Ohio App.3d 19, 460 N.E.2d 280 (1983); *City of Hayward v. Mohr*, 160 Cal.App.2d 427, 325 P.2d 209 (1958); *Hickey v. Danna*, 238 Mo.App. 839, 187 S.W.2d 764 (1945).

13. *Lynn v. Rainey*, see note 10, supra; *Frater Oklahoma Realty Corp. v. Allen Laughon Hardware Co.*, 1952 OK 84, ¶ 22, 245 P.2d 1144.

14. *Bonner v. Oklahoma Rock Corp.*, 1993 OK 131, ¶ 7, 863 P.2d 1176; *Story v. Hefner*, 1975 OK 115, 540 P.2d 562.

15. See, *Lanford v. Cornett*, note 9, supra; *Rush v. Champlin Refining Co.*, 1960 OK 248, ¶ 17, 357 P.2d 984; and *Ewing v. Trawick*, 1953 OK 113, ¶ 23, 208 Okla. 311, 256 P.2d 182 in which we recognized that if the meaning of the terms used in a deed are not clear, subsequent acts of the parties may be considered in ascertaining intent of the parties; and *Pierce Couch Hendrickson Baysinger & Green v. Freede*, 1997 OK 33, ¶ 23, 936 P.2d 906; *Mercury Inv. Co. v. F.W. Woolworth Co.*, 1985 OK 38, ¶ 9, 706 P.2d 523; *Farmer v. Trepp*, 1962 OK 255, ¶ 16, 376 P.2d 596 where we held that if a contract is ambiguous, construction given by action of the parties will be given great weight.

16. *Burkhart v. Jacob*, 1999 OK 11, ¶ 12, 976 P.2d 1046.

hotel's construction actually obstructs the property lines.[17]

## CONCLUSION

¶ 16 A motion for summary judgment should be sustained only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law.[18] All conclusions drawn from the evidentiary materials submitted to the trial court are viewed in the light most favorable to the party opposing the motion. Before a motion for summary judgment under Rule 13, 12 O.S. Supp.1993, Ch. 2 App. Rules for the District Courts may properly be granted, the movant must show that there is no disputed issue of material fact.[19] Here, both parties moved for summary judgment. However, the evidentiary materials presented by the parties are not dispositive of the material questions of fact concerning whether the makers of the indenture intended to keep the entire length of the property lines unobstructed or whether it was intended that only a portion need be unobstructed to allow access, and whether the hotel's construction actually obstructs the property lines. Summary judgment was premature.

**COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT REVERSED AND REMANDED.**

¶ 17 HODGES, KAUGER, WATT, BOUDREAU, WINCHESTER, JJ., concur.

¶ 18 OPALA, J., concurs in result.

¶ 19 SUMMERS, C.J., concurs in part/dissents in part.

¶ 20 HARGRAVE, V.C.J., LAVENDER, J., dissent.

---

**17.** The evidentiary materials do show that both parties admit that: 1) they have previously maintained an unobstructed paving along the entire common property lines allowing vehicles and pedestrians to travel back and forth across the properties; 2) the restaurant previously attempted to construct a curb along the boundary line and the hotel objected citing the indenture; and 3) when the restaurant asked the hotel to move its curb based on the indenture, the hotel agreed to move it back 8 feet. Also included is an affidavit of a prior owner of the restaurant's property insisting that the indenture was intended to ensure that access remain unobstructed along the entire length of the property lines.

**18.** *Skinner v. Braum's Ice Cream Store,* 1995 OK 11, ¶ 9, 890 P.2d 922; *Buck's Sporting Goods, Inc., of Tulsa v. First Nat. Bank & Trust Co. of Tulsa,* 1994 OK 14, ¶ 11, 868 P.2d 693.

**19.** *Phelps v. Hotel Management,* 1996 OK 114, ¶ 8, 925 P.2d 891; *Roper v. Mercy Health Center,* 1995 OK 82, ¶ 4, 903 P.2d 314.